**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 7 |
| PURSUIT CAPITAL MANAGEMENT, LLC, | : | Case No. 14-10610-PJW |
| Debtor.[1] | : | Re: D.I. 33 |
|  | : | Hearing Date: 9/29/2014 |
|  | : | at 11:00 a.m. (ET) |

**OBJECTION OF ANTHONY SCHEPIS AND FRANCIS CANELAS, JR. TO
EMERGENCY MOTION OF CLARIDGE ASSOCIATES, LLC, JAMISCOTT, LLC,
LESLIE SCHNEIDER, LILLIAN SCHNEIDER AND THE ESTATE OF LEONARD
SCHNEIDER TO FIND THE DEBTOR REMAINS GENERAL PARTNER OF THE
PURSUIT CAPITAL MANAGEMENT FUND I, L.P. AND TO COMPEL COMPLIANCE
WITH COURT ORDERS AND REPRESENTATIONS OF THE DEBTOR**

Anthony Schepis ("Schepis") and Frank Canelas, Jr. ("Canelas", and together with

Schepis, the "Respondents"), by and through their undersigned attorneys, hereby file this

objection (the "Objection") to the Motion of Claridge Associates, LLC, Jamiscott, LLC, Leslie

Schneider, Lillian Schneider And The Estate Of Leonard Schneider (the "Claimants") to Find the

Debtor Remains General Partner of the Pursuit Capital Management Fund I, L.P. and to Compel

Compliance with Court Orders and Representations of the Debtor [Dkt. No. 33] (the "Emergency

Motion").[2]  In support, the Respondents respectfully represent as follows:

**PRELIMINARY STATEMENT**

By the Emergency Motion, the Claimants seek an order granting two forms of relief:

(1)     that [the Chapter 7] Debtor remains General Partner of Pursuit Capital
        Management Fund I, L.P. (the "Pursuit Fund I") under the control of the [Chapter
        7] Trustee and that any purported withdrawal by [the Chapter 7] Debtor as

---

[1]     The last four digits of the Debtor's federal tax identification number are 8234.  The Debtor's mailing address
        and corporate headquarters is 34 East Putnam Avenue, Suite 113 Greenwich, CT 06830.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

General Partner was null and void under the governing Partnership Agreement; and

(2)    requiring [the Chapter 7] Debtor and/or the Insiders[3] to immediately transfer to the control of the [Chapter 7] Trustee for appropriate disposition, $1,186,346.38 which the [Chapter 7] Debtor has been ordered to cause to be paid from Pursuit Fund I to Claimants prior to the bankruptcy filing, and which funds have been secretly removed by [the Chapter 7] Debtor and/or Insiders in violation of Court Orders and their own representations at the 341 Hearing.

As demonstrated below, the Emergency Motion is yet another improper attempt by Claimants to enforce a pre-petition judgment entered against the Chapter 7 Debtor based on unsupportable allegations and incorrect facts. Worse, the Claimants are requesting this Court to put its imprimatur on an act that would constitute a breach of the General Partner's fiduciary obligations to Pursuit Fund I, regardless of whether the General Partner of Pursuit Fund I were the Chapter 7 Debtor, which it is not, or Northeast Capital Management LLC ("Northeast"). Moreover, this time, the Claimants choose a route that (1) they could have pursued, but did not pursue, directly with the Supreme Court of the State of New York (the "New York Court"), and (2) requires this Court to enter declaratory relief against non-debtor third parties outside an adversary proceeding, which relief the Claimants are estopped from pursuing. For these and the other reasons set forth below, the Emergency Motion should be denied.

## OBJECTION

As noted above, Claimants seek two forms of relief: (i) an order declaring that the Chapter 7 Debtor is still the General Partner of Pursuit Fund I; and (ii) an order requiring the Chapter 7 Debtors and/or the Insiders to immediately transfer assets of a non-debtor Pursuit Fund I to the Chapter 7 Trustee. This Court should not grant the Claimants either form of requested relief.

---

[3] The Claimants define Mr. Schepis and Mr. Canelas as the Insiders, although at this point they exercise no control over the Chapter 7 Debtor.

I.    **The Emergency Motion Must Be Denied On Procedural Grounds**

    A.    **The Claimants Improperly Seek Declaratory Relief Outside An Adversary Proceeding**

As this Court well knows, if a party seeks declaratory relief, the party must proceed by adversary proceeding. See Fed. R. Bankr. P. 7001(9). Plainly, the Claimants seek such declaratory relief by requesting an order that the Debtor remains the General Partner and that the replacement of the Chapter 7 Debtor as the General Partner was "null and void under the Partnership Agreement". See id. 7001(9). Moreover, they seek relief against the Respondents, to recover money or property held by non-debtor Pursuit Fund I and controlled by its non-debtor General Partner, Northeast. See id. 7001(1). Furthermore, Claimants essentially seek a declaration that they have an interest in property, even though such property is not property of the estate. See id. 7001(2). None of this relief may be granted outside the context of an adversary proceeding that provides all necessary parties with the due process protections afforded in an adversary proceeding. Therefore, on this basis alone, the Emergency Motion should be denied.[4]

    B.    **The Claimants Lack Standing To Seek The Relief Requested**

As set forth in the Emergency Motion, the Claimants contend that the Chapter 7 Debtor remains the General Partner of Pursuit Fund I. In support, the Claimants contend that under the "Partnership Agreement" the replacement of the Chapter 7 Debtor by Northeast as the General Partner was null and void. See Emergency Motion ¶¶ 9–15. Importantly, the "Partnership Agreement" the Claimants refer to is the Amended and Restated Partnership Agreement of Pursuit Capital Management Fund I, L.P. (the "Fund Partnership Agreement"), *not the partnership agreement of the Chapter 7 Debtor.* Therefore, the Claimants are making the

---

[4] If the Chapter 7 Debtor is not the General Partner, the Court cannot grant the relief requested.

Emergency Motion, not as creditors of the Chapter 7 Debtor, but as purported limited partners of Pursuit Fund I.[5] That contractual dispute, however, is not properly before this Court as it is a dispute between the Claimants, alleged limited partners, and Northeast, the current General Partner.

Moreover, to the extent the Claimants are seeking relief as creditors of the Chapter 7 Debtor, they lack standing to bring any cause of action regarding the replacement of the Chapter 7 Debtor as the General Partner of Pursuit Fund I.  If any action exists, the Chapter 7 Trustee must be the party asserting such claims.  See In re Transcolor Corp., 296 B.R. 343, 361 (Bankr. D. Md. 2003) ("[W]henever a cause of action 'belongs' to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings."); see also In re DeMert & Dougherty, Inc., 271 B.R. 821, 838 (Bankr. N.D. Ill. 2001) ("Among those powers, the trustee may bring claims against the debtor's fiduciaries.").  Indeed, the Court made this point clear at the last hearing, leaving any decision to pursue a cause of action with the Chapter 7 Trustee.  At this point, the Chapter 7 Trustee has made no such decision.  Therefore, without a showing that the Chapter 7 Trustee has a conflict of interest or has abused his discretion or otherwise acted in derogation of his fiduciary duties to the estate, the Claimants lack standing to seek the relief set forth in the Emergency Motion.  See PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.), 540 F.3d 892, 899 (8th Cir. 2008) (finding that "critical inquiry" in determining if a creditor can obtain derivative standing is whether the trustee abused its discretion by "unjustifiably refusing to pursue the creditor's proposed claims.").  No such showing has been or could be made. Consequently, the Claimants' request should be denied because they lack standing to pursue the cause of action asserted in the Emergency Motion.

---

[5] The Respondents and Pursuit Fund I contend that the Claimants are not, and were not at the time Northeast replaced the Chapter 7 Debtor, limited partners of Pursuit Fund I.

C.    **The Claimants Are Judicially Estopped From Contending That Northeast Did Not Properly Replace The Chapter 7 Debtor As the General Partner of Pursuit Fund I.**

The Court should also deny the Emergency Motion because the Claimants are judicially estopped from contending that Northeast is not the General Partner, given Claimants' prior motions and allegations before the New York Court that asserted that Northeast was the General Partner and should be liable for the judgments entered against the Chapter 7 Debtor.

As this Court was previously advised, the Claimants moved the New York Court to add Northeast as a party to the arbitration award, and thereby sought to enforce the arbitration award against Northeast as the General Partner of Pursuit Fund I. In support of their position, the Claimants made two arguments. First, the Claimants argued that as the new General Partner, Northeast, was a successor entity to the Chapter 7 Debtor and, thus, should be liable on the New York Court judgments to the same extent that the Chapter 7 Debtor was liable. See Exhibit A pages 6-7. Second, the Claimants contended that there was a pre-bankruptcy "transfer" of the General Partnership interest to Northeast and that "transfer" constituted a fraud on the New York Court. See id. at pp 7-8. Both of these positions rested on the Claimant's acknowledgement that Northeast was the General Partner of Pursuit Fund I. Having lost in the New York Court, however, the Claimants are now taking the opposite position, arguing that Northeast is not the General Partner. This sort of litigation tactic is exactly what the doctrine of judicial estoppel is intended to prohibit.

As this Court knows, "judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001). For the doctrine to apply, three requirements must be met. "First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the

party changed his or her position in bad faith—i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Id. at 779-80 (internal marks and citations omitted).

Plainly, the Claimants have taken inconsistent positions. In the New York Court, they argued that Northeast, as the General Partner, should be liable as a successor or transferee of the chapter 7 Debtor's general partnership interest. In this Court they are arguing that Northeast is not the General Partner. Moreover, it is clear the Claimants are playing fast and loose with this Court and the New York Court. The Claimants could have raised the argument in the New York Court, but did not do so. Now, after losing in the New York Court, they are taking a second bite on a contractual issue related to the Fund Partnership Agreement. Third, there is simply no lesser sanction for the Claimants' litigation tactic than to hold that the Claimants are judicially estopped from pursuing the position that Northeast is not the General Partner of Pursuit Fund I. Therefore, the Emergency Motion should also be denied because the Claimants are judicially estopped from arguing that Northeast is not the General Partner of Pursuit Fund I.

**II.    Even Assuming That The Court Were To Address The Claimants' Substantive Argument, The Court Should Determine That Northeast Is The General Partner of Pursuit Fund I.**

Even if this Court were to proceed on the Emergency Motion, the governing documents demonstrate that Northeast has been the General Partner of Pursuit Fund I since February 17, 2014. Specifically, as the Claimants readily admit, the governing document with respect to Pursuit Fund I is Fund Partnership Agreement, a copy of which is attached hereto as Exhibit B. Section 8.04 of the Pursuit Fund I Partnership Agreement provides as follows:

Section 8.04. Additional General Partners. The General Partner may also appoint an additional general partner(s) or a replacement partner without the consent of the limited partners.

On February 17, 2014, the General Partner of Pursuit Fund I appointed Northeast as the sole replacement general partner of Pursuit Fund I.  See Exhibit C.  Furthermore, on that same day, the managing members of Northeast approved Northeast's appointment and admission as the general partner of Pursuit Fund I.  See Exhibit D.  Therefore, as of February 17, 2014, Northeast became the General Partner of Pursuit Fund I.

While the Claimants want to contest these facts, there is simply no support for their position.  In particular, Claimants attempt to recharacterize the replacement of the General Partner on February 17, 2014 as the Chapter 7 Trustee having "withdrew voluntarily" from the partnership or "transferred all or a portion of its General Partner interests" to Northeast.  See Emergency Motion ¶¶ 10-11.  Using that recharacterization, the Claimants contend that the consent of the limited partners was required.  See Exhibit B, Section 8.01; see also, Emergency Motion at ¶ 15.  These allegations are simply not supported by indisputable facts demonstrated by the February 17, 2014, Resolutions of Pursuit Capital Management LLC and Resolutions of Northeast Capital Management LLC.  See Exhibits C and D.  Therefore, the actual action that was taken –replacement of the General Partner –could be taken without the consent of the limited partners.  Compare Exhibit B, Section 8.04 with id. Section 8.01

Thus, even if the Claimants were limited partners, which the respondents dispute, and the Court were to consider the substance of their contractual argument under the Fund Partnership Agreement, the Court should deny the Claimants' request to declare the Chapter 7 Debtor as the General Partner of Pursuit Fund I.

III.   **The Court May Not Properly Direct The Chapter 7 Trustee Or The Purported Insiders To Transfer The Assets Of Pursuit Fund I To the Trustee To Distribute To The Claimants.**

A.   **The Claimants Are Not Entitled To Payment From Pursuit Fund I's Assets**

The Claimants are nothing more than creditors of the Chapter 7 Debtor and, therefore, are only entitled to a distribution from the assets of the Chapter 7 Debtor. Notwithstanding that fact, the Claimants now request that this Court direct the Chapter 7 Debtors and/or the Insiders to immediately transfer monies held by Pursuit Fund I to the Trustee, which monies the Claimants request be distributed to them because the "Debtor had been ordered to cause to be paid from Pursuit Fund I to Claimants prior to the bankruptcy filing . . . ." The Claimants' request rests on a failure to acknowledge certain facts and a flawed legal position regarding the relationship between a general partner and the assets of the partnership.

The order of the New York Court dated September 13, 2013 (the "September 2013 Order") provides, in pertinent part as follows:

> (a) Pursuit Capital Management. LLC (the Pursuit General Partner) is enjoined from transferring in any manner, directly or indirectly, any monies or assets of any kind of the Pursuit Capital Management Fund I, L.P. (the "Partnership") to itself, any of its affiliates, subsidiaries, owners or principals, or family members of its owners or principals, or to any associated persons or entities;

> (b) The Pursuit General Partner is further enjoined from transferring in any manner, directly or directly, any monies or assets of any kind of the Partnership to anyone or any entity, if as a result of such transfer the assets of the Partnership would equal and amount less than $1,186,346 . . . .

(emphasis added)

As is evident from the above, the September 2013 Order enjoined the Chapter 7 Debtor, no one else. More importantly. nothing in the September 2013 Order directed the Chapter 7 Debtor to transfer funds held in Pursuit Fund I to its General Partner for the General Partner to distribute to the Claimants. Indeed, the express terms of the September 2013 Order precluded the Chapter 7 Debtor from transferring the funds in Pursuit Fund I "to itself". See Exhibit E, September 2013 Order, paragraph (a). And finally nothing in the September 2013 Order precluded or prohibited the Chapter 7 Debtor from appointing a replacement general partner.

As the Claimants point out, the New York Court entered a second order dated March 20, 2014 (the "March 2014 Order"). The March 2014 Order did provide that the Chapter 7 Debtor "shall cause the payment of the sum of $1,186,346.38 by Pursuit Capital Management Fund I, L.P. to" the Claimants. See Exhibit F, March 2014 Order, paragraph (2). While the Claimants wish to rely on this March 2014 Order, they ignore the fact set forth above that one month earlier, Northeast became the General Partner of Pursuit Fund I. Consequently, even though the March 2014 Order directed the Chapter 7 Debtor to have Pursuit Fund I pay the sum of $1,186,346.38 to the Claimants, the Chapter 7 Debtor simply had no authority to do so, had no access to those monies and had no right to use the assets of Pursuit Fund I to pay its own creditors.

Moreover, even if the March 2014 Order were entered prior to the Chapter 7 Debtor being replaced as the General Partner, the Order would have put the General Partner in the untenable position of requiring the General Partner to breach its fiduciary duties to the limited partners of Pursuit Fund I. As Delaware Courts have stated, "a general partner owes the traditional fiduciary duties of loyalty and care to the limited partnership and its partners . . . . Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., 817 A.2d 160, 170-71 (Del. 2002) (internal citations omitted). Moreover, "[i]t is axiomatic that the mere bankruptcy of a partner does not bring the partnership's assets within the jurisdiction of the bankruptcy court. A debtor's interest in a partnership is an asset of the debtor's estate under 11 U.S.C § 541; the assets of the partnership are not. In re Olszewski, 124 B.R. 743, 746–47 (Bankr.S.D.Ohio 1991); Normandin v. Normandin (In re Normandin), 106 B.R. 14 (Bankr.D.Mass.1989). Thus, a "well-settled principle [is] that a general partner of a limited partnership may not use assets of the partnership for the general partner's individual purposes." Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd., 407 F. Supp. 2d 483, 500 (S.D.N.Y. 2005) aff'd and remanded, 246 F.

App'x 73 (2d Cir. 2007). That, however, is exactly what the March 2014 Order would have required the Chapter 7 Debtor to do if it had remained the General Partner of Pursuit Fund I. Pursuit Fund I was not subject to any judgment, but nonetheless the New York Court ordered its former General Partner to use Pursuit Fund I's assets to pay a judgment against the former General Partner.

Consequently, because Respondents knew that the Chapter 7 Debtor lacked the funds to appeal any such order and did not want the General Partner to breach its fiduciary duty, the Respondents, acting as the General Partner of Pursuit Fund I, replaced itself as General Partner with Northeast. In so doing, the Respondents preserved the only funds held by Pursuit Fund I, against which there were competing claims far in excess of the $1,186,346.38. So, as explained at the 341 meeting, the General Partner took action not in violation with either the September 2013 or March 2014 Orders. but to protect the monies owned by Pursuit Fund I as required by the General Partner's fiduciary obligations.

**B.    The Facts and Subsequent Events Justified Northeast Moving the Funds From the UMB Account**

The Claimants again contend that the Respondents broke a promise to the Chapter 7 Trustee by moving the funds from UMB to an attorney escrow account. The Claimants, however, intentionally ignore a part of the 341 meeting transcript and critical subsequent events. First, although the Chapter 7 Trustee was advised that he would be given advance notice before funds would be moved, Mr. Schepis also stated at the 341 meeting, he could not guarantee that UMB would continue to be willing to hold the monies. See Exhibit G, at 34: 8-12. In fact, as the Chapter 7 Trustee has been advised, UMB requested that the account be closed.

Moreover, the Chapter 7 Trustee was advised both before and at the 341 meeting, that the Respondents maintained that only Northeast, not the Chapter 7 Debtor, had authority with

respect to the funds in the UMB account.  The Chapter 7 Trustee was also fully aware of the

dispute between the Claimants and the Respondents regarding the propriety of replacing the

General Partner.  Furthermore, although the Respondents requested that the Chapter 7 Trustee

take a position on the Claimants' motion to add Northeast as a party, whether that position was to

say Northeast was not the General Partner or to join the Claimants in seeking to enjoin Northeast

from taking action with respect to the funds in the UMB account, the Chapter 7 Trustee took no

action, conceding it had no interest in the funds.  Consequently, subsequent to the ruling denying

the Claimants' motion to add Northeast as a party, Northeast simply determined to honor UMB's

request, believing that advance notice to the Chapter 7 Trustee was no longer necessary because

the Chapter 7 Trustee had conceded that it had no rights in or to the $1,186,394.38 as the former

General Partner of Pursuit Fund I.

## CONCLUSION

For the reasons set forth herein, Respondents respectfully request that the Court deny

the relief sought in the Emergency Motion in its entirety.

Dated: September 25, 2014
       Wilmington, Delaware

                           /s/ Stuart M. Brown
                           Stuart M. Brown (DE 4050)
                           1201 N. Market Street, Suite 2100
                           Wilmington, DE 19801
                           Telephone: (302) 468-5700
                           Facsimile: (302) 394-2341
                           Email: Stuart.Brown@dlapiper.com

                              -and-

                           Gregg M. Galardi
                           DLA PIPER LLP (US)
                           1251 Avenue of the Americas
                           New York, New York 10020
                           Telephone: (212) 335-4500
                           Facsimile: (212) 335-4501

                           *Attorneys for the Respondents*