**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| PURSUIT CAPITAL MANAGEMENT, LLC, | : | |
| | : | Case No. 14-10610 (PJW) |
| Debtor. | : | |
| | : | |

**EMERGENCY MOTION OF CLARIDGE ASSOCIATES, LLC, JAMISCOTT, LLC, LESLIE SCHNEIDER, LILLIAN SCHNEIDER AND THE ESTATE OF LEONARD SCHNEIDER TO MODIFY THE AUTOMATIC STAY**

Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, Lillian Schneider, and the Estate of Leonard Schneider (collectively, the "Claimants"), by and through undersigned counsel, hereby request this Court enter an Order granting limited relief from the automatic stay to permit them to pursue state court remedies with respect to $1,186,346.38 previously held in a Pursuit Fund I bank account which Debtor had been ordered by a State Court Judgment to cause to be paid from that account to Claimants, and which funds have been transferred by the Insiders or affiliates of the Insiders in violation of a State Court Restraining Order.

This Motion is being made after (a) the Trustee filed papers (DKT. 37) disclaiming any interest in the $1,186,346.38; and (b) the Insiders of the Debtor filed papers (DKT. 38) asserting the $1,186,346.38 is not property of the estate, that Debtor is no longer the general partner of the Pursuit Fund I, and that Debtor was not involved in the transfer of the funds.

Claimants intend to seek relief in state court for violation of the Restraining Order and to enforce the Judgment against the Insiders and entities affiliated against the Insiders, including the entity the Insiders claim is the new general partner of the Pursuit Fund I. No affirmative relief will be sought against Debtor, the Trustee or the Debtor's estate in bankruptcy. However,

117627329_1

because the Judgment and the Restraining Order were both entered against Debtor, Claimants' seek relief from the stay to name Debtor as a nominal party in any such state court action.

This Motion is made with the support of Alpha Beta Capital Partners, the only other non-Insider creditor.

In support of this Motion the Claimants aver as follows:

1. This is a contested matter in which the Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and the standing order of reference in this district. Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

2. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (G).

3. Claimants and Alpha Beta are the sole, non-Insider, limited partners in the Pursuit Capital Management Fund I, L.P (the "Pursuit Fund I") and the only non-Insider creditors of Debtor.

4. Until the eve of the bankruptcy filing, Debtor was the sole General Partner of the Pursuit Fund I. Debtor is owned and controlled by two individuals, Frank Canelas, Jr. and Anthony Schepis, (the "Insiders"). On February 14, 2014, the Insiders formed Northeast Capital Management, LLC ("Northeast") and claim to have contemporaneously withdrawn Debtor as General Partner of the Pursuit Fund I and substituted Northeast as a general partner. Like Debtor, Northeast is owned, managed and controlled by the Insiders.

5. On September 12, 2014, Claimants filed a Motion [D.I. 33] seeking, among other relief, an Order that Debtor and /or the Insiders immediately the transfer to control of the Trustee, for appropriate disposition, $1,186,346 which Debtor had been Ordered by a New York State Court Judgment (the "Judgment") to cause to be paid from the Pursuit Fund I to Claimants, and which funds had been secretly moved by Debtor and / or the Insiders in violation of a New

2

York State court Restraining Order (the "Restraining Order") and representations made at the 341 Hearing.

6. The events giving rise to the Judgment and the Restraining Order are detailed at ¶¶ 19-22 of Claimants' September 12, 2014 Motion. In brief, following an arbitration between Claimants and Debtor, Debtor was directed to cause the Pursuit Fund I to pay $1,186,346.38 to Claimants, representing Claimants' own funds then being held in a Pursuit Fund I account at UMB Bank. Claimants obtained a Restraining Order dated September 13, 2013 from the New York State Supreme Court to protect the $1,186,346.86 while a motion to confirm the arbitration award was pending. The Restraining Order enjoins Debtor from:

> (a) … transferring in any manner, *directly or indirectly*, any monies or assets of any kind of the [Pursuit Fund I] to itself, any of its affiliates, subsidiaries, owners or principals, or family members of its owners or principals, or to any associated persons or entities;
>
> (b) … transferring in any manner, *directly or indirectly*, any monies or assets of any kind of the [Pursuit Fund I] to anyone or any entity if, as a result of such transfer the assets of the [Pursuit Fund I] would equal an amount less than $1,186,346.

A true and correct copy of the Restraining Order is attached hereto as <u>Exhibit A</u>.

7. After confirmation of the arbitration award, on March 20, 2014, the State Court issued a Judgment requiring the Debtor to cause the Pursuit Fund I to pay the $1,186,346 to Claimants. A true and correct copy of the Phase I Judgment is attached hereto as <u>Exhibit B</u>.

8. The Insiders filed this bankruptcy on behalf of the Debtor the next day, March 21, 2014.

9. At the 341 meeting held on April 29, 2014, Debtor and its counsel represented that the Restraining Order would be complied with, that in no circumstance would the funds at UMB Bank be moved or otherwise touched, and that in any event, nothing would be done without notifying the Trustee in advance. See 341 Hearing Transcript, attached as Exhibit C, at Tr. 7:6-8:2 (Schepis: "there's a TRO on it, so those funds have been in the same place from the very beginning, but can't be moved anyway"; Tr. 25:1- 25:5 (Galardi: "there's an injunction precluding it [Debtor] from doing anything with those funds."); Tr. 29:23-30:14 (Galardi: "We have no intention to withdraw or have any – direct those funds); Tr. 32:12 – 32:25 (Galardi: "we've directed [Northeast] not to withdraw any money from those funds…"). Tr. 33:7-33:9 ("nothing will happen until [the Trustee] knows it").

10. Notwithstanding the Restraining Order and these representations, on June 30, 2014, the Insiders secretly directed UMB Bank to transfer all funds to the escrow account of Burg, Simpson, Eldridge, Hersch & Jardine, P.C., counsel for entities affiliated with the Insiders in another litigation pending in state court in Connecticut. A copy of the instructions from the Insiders to UMB to transfer the funds is attached as Exhibit D.

11. After learning of this transfer in late August, Claimants filed their previously-referenced motion on September 12, 2014 to have the $1,186,346.38 transferred to the Trustee for appropriate disposition. [D.I. 33]

12. The Trustee filed a response on September 25, 2014, disclaiming any ability of the Debtor's estate to "direct the funds" of the Pursuit Fund I and stating that "[Claimants'] remedy, therefore must be against the Partnership [the Pursuit Fund I] or the current General Partner of the Partnership, or perhaps against the Insiders, but in no event is it against the Debtor's estate." [D.I. 37 at ¶ 11].

13. Schepis and Canelas filed an opposition on September 25, 2014, contending the $1,186,346 at issue is not property of the estate [D.I. 38 at p. 3] and that Northeast, and not the Debtor, was the party responsible for moving the funds [D.I. 38 at pp. 9-10].

14. In short, neither the Trustee nor the Insiders believe that the $1,186,346.38 is property of the estate, or that the Debtor is the proper party against which to seek relief.

15. Claimants are fully prepared to seek relief on the merits to enforce the Restraining Order, for contempt, for damages, and to enforce the Judgment against, Schepis, Canelas, Northeast, the Pursuit Fund I, and / or any other affiliates of the Insiders (or others) to the extent they were engaged in the transfer of the funds or have control over the funds.

16. No affirmative relief will be sought in any such state court action against Debtor, the Trustee or the Debtor's estate in bankruptcy. However, as the Restraining Order and the Judgment were issued against Debtor, Claimants believe any such action should name the Debtor as a nominal party, and therefore request modification of the stay to permit this. First, if Debtor is not named as a party in any state court action, the issue of whether Debtor is nonetheless a necessary party to such action will almost surely be raised either by the Insiders, the New York Court or both. Second, in the absence of limited relief from the stay, the issue of whether the stay should apply (regardless of whether Debtor is named as a party) will almost surely be raised by the Insiders or by the New York Court. Thus, in the absence of the limited relief from the stay requested here, there will be a procedural morass in state court that risks the further dissipation of the funds, and serves only to benefit the Insiders who secretly transferred the funds and to delay any adjudication on the merits.

17. As such, Claimants respectfully seek limited relief from the stay so that these serious issues involving violation of a Restraining Order may be determined on the merits in New York State Court.

## RELIEF REQUESTED

18. The Claimants respectfully request that the Court grant relief in part from the stay so Debtor may be named as a nominal party by Claimants in a state court action(s) seeking remedies against Northeast, the Insiders, any other affiliates of the Insiders, the Pursuit Fund I, and any other appropriate parties, including any parties holding the funds, to enforce the Restraining Order, for damages for violation of the Restraining Order, for contempt, to compel the transfer of the funds to an independent escrow agent or other entity or person to ensure their safe keeping, and to enforce the Judgment. No affirmative relief will be sought in any such action against Debtor, the Trustee or the Debtor's estate in bankruptcy.

19. Section 362(d) of the Bankruptcy Code provides "[o]n request of a party-in-interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause . . . " 11 U.S.C. § 362(d). The need to seek enforcement of a pre-bankruptcy injunction against the debtor constitutes "cause" for relief from the stay. *See In re Hohol*, 141 B.R. 293, 298 (M.D. Pa. 1992).

20. In assessing whether relief from the automatic stay should be granted for "cause", Delaware bankruptcy courts weigh "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." *In re Downey Financial Corp.*, 428 B.R.

6

117627329_1

609 (Bankr. D. Del. 2010); *see also Hohol*, 141 B.R. at 298 ("Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay.") (citing *In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983)). All three of the factors enumerated in *Downey Financial* weigh heavily in favor of granting relief from the automatic stay.

21.     First, the bankruptcy estate will not be prejudiced by granting this relief. The funds at issue are not property of the Debtor, and both the Trustee and the Insiders have already made clear they do not believe the funds at issue are property of the estate. No affirmative relief will be sought against Debtor, the Trustee or the Debtor's estate. In addition, the only other non-party creditor supports this Motion.

22.     Second, the "balance of hardships" overwhelmingly favors the Claimants. To date, Claimants have been prevented from having a hearing on the merits regarding a serious violation of a Restraining Order. If Claimants are not permitted to move forward with their state court remedies, the funds risk being dissipated, and there will be no opportunity for the New York State Court to rule on the merits of whether its Restraining Order has been violated. In the absence of the requested order for a limited lifting of the stay, we expect the Insiders will argue (a) that Debtor is a necessary party, and (b) that, in any event, the stay prevents Claimants from obtaining relief under the theory that Claimants are attempting to satisfy a judgment against the Debtor as was argued, for example, in *International Distribution Centers, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723 (Bankr. S.D.N.Y.1986). This request for limited relief from the stay is to avoid requiring the New York court to engage in such an unnecessary parsing exercise, when the Trustee has already disclaimed any interest in the funds and Debtor has already argued that the

funds are not property of the estate. There would be no hardship to the Debtor from lifting the stay as no affirmative relief would be sought against Debtor.

23. Third, Claimants have a strong probability of prevailing on the merits. The Insiders have orchestrated a transfer of approximately $1.2 million in violation of a Restraining Order. The primary argument advanced by the Insiders is that the transfer was made by Northeast, and that the Restraining Order is directed at the Debtor. (DKT. 38 at 9-11.). Northeast is wholly owned and controlled by Schepis and Canelas, and the Restraining Order specifically prohibits either "direct or indirect" violations. Acting through Northeast or through the Insiders personally, or through any affiliated entity, clearly violates the Restraining Order's prohibition against conduct, taken "directly or indirectly" that would violate the Order. *See Mead Johnson & Co. v. Rosen*, 16 A.D. 2d 337 (N.Y. App. Div. 1st Dep't 1962); *Quinter v. Volkswagen*, 676 F.2d 969, 972 (3d Cir. 1982) ("A person who is not a party to a proceeding may be held in contempt if he or she has actual knowledge of a court's order and either abets the defendant or is legally identified with him"); *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990).

WHEREFORE, the Claimants respectfully request that this Court enter an Order granting the relief requested above and granting such other and further relief as is appropriate under the circumstances.

Dated: October 14, 2014

Respectfully submitted,

By: DILWORTH PAXSON LLP

/s/ Jesse N. Silverman
Lawrence McMichael
Christie Comerford
Jesse Silverman (DE #5446)
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7284
Facsimile: (215) 575-7200

-and-

One Customs House, Suite 500
704 King Street
Wilmington, Delaware  19801
Telephone:  (302) 571-9800
Facsimile:  (302) 571-8875

*Attorneys for Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, Lillian Schneider and the Estate of Leonard Schneider*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October 2014, a true and accurate copy of the foregoing Emergency Motion to Modify the Automatic Stay was filed and served upon the parties listed below through the Court's C/M ECF system.

| | |
|---|---|
| **Stuart M. Brown**<br>**Gregg M. Galardi**<br>DLA Piper LLP<br>1201 North Market Street, Suite 2100<br>Wilmington, DE 19801 | **Jeoffrey L. Burtch**<br>Cooch & Taylor<br>824 Market Street Mall, Suite 1000<br>P. O. Box 549<br>Wilmington, DE 19899 |
| **Mark E. Felger**<br>Cozen O'Connor<br>1201 N. Market Street, Suite 1001<br>Wilmington, DE 19801 | **United States Trustee**<br>844 King Street, Room 2207<br>Lockbox #35<br>Wilmington, DE 19899-0035 |
| **Justin Cory Falgowski**<br>**Richard A. Robinson**<br>Reed Smith LLP<br>1201 North Market Street, Suite 1500<br>Wilmington, DE 1980 | **Johnathan Harris, Esquire**<br>Harris, O'Brien, St. Laurent & Chaudhry<br>111 Broadway, Suite 1502<br>New York, NY 10006 |

      /s/ Stephanie Lisko
      Stephanie Lisko, Paralegal

117627329_1