## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PURSUIT CAPITAL MANAGEMENT, LLC,<br><br>Debtor. | Case No. 14-10610 (LSS)<br><br>Chapter 7<br><br>**Hearing Date: March 26, 2015 at 2:00 p.m.**<br>**Objection Deadline: March 19, 2015 at 4:00 p.m.**<br><br>**Ref. No. 66** |

## PRELIMINARY OBJECTION TO TRUSTEE'S MOTION FOR AN ORDER APPROVING AGREEMENT TO SETTLE, TRANSFER AND ASSIGN CERTAIN CLAIMS, RIGHTS AND INTERESTS

Now Come Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P. (collectively, the **"Creditors"**) and in support of their Preliminary Objection[1] (the **"Objection"**) to the Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests [Docket No. 66] (the **"Motion"**) represent as follows:

### Introduction and Overview

On March 2, 2015, the Chapter 7 Trustee (the **"Trustee"**) for the above captioned Debtor (the **"Debtor"**) filed the instant Motion seeking approval of an agreement (the **"Agreement"**) by, between and among the Trustee and Alpha Beta Capital Partners, L.P., Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider and Lillian and Leonard Schneider (the "**Claridge Parties**") to settle, transfer and assign certain claims, rights and interests (the **"Transaction"**) that are property of the Debtor's estate (the **"Estate"**) being held for the benefit of all creditors.

---

[1] This is a preliminary objection because, as noted herein, discovery is required to determine the process by which the Transaction was negotiated and whether it lacks good faith and fails to maximize value for the Estate. The Creditors reserve their right to amend and supplement this Preliminary Objection to include information that is learned through the discovery process.

The Creditors intend to show that the proposed Transaction does not maximize the value of the assets being sold and is clearly not in the best interest of the Debtor's Estate.

The Trustee's actions, in preferring one group of creditors to the detriment of other identically situated creditors by refusing to consider a higher and better proposal and signing an agreement that prohibits the acceptance of higher and better proposals, lacks good faith. The full extent of the Claridge Parties and Trustee's actions in negotiating the Transaction needs to be fully understood through the discovery process that is being commenced simultaneously with the filing of this Preliminary Objection.

As a result, this Court should defer consideration of the Motion to allow for the completion of discovery regarding the actions by the Trustee and Claridge Parties in this matter and ultimately deny the Motion.

## Lack of Good Faith

1.      The Creditors believe that the proposed Transaction clearly violates the Trustee's duty to maximize value for the benefit of all parties-in-interest and treat similarly situated parties similarly. Simultaneously with the filing this Objection, the Creditors have commenced discovery to fully understand the process by which the Transaction was negotiated, whether the Transaction was negotiated in good faith and whether it will maximize value for the Estate. To the extent the discovery needed to fully and fairly resolve the Motion has not been fully completed prior to the hearing on the Motion, in light of the serious and significant issues raised in this Objection, the Creditors respectfully request that the hearing on the Motion, currently scheduled for March 26, 2015, be regarded as a status conference where an appropriate discovery schedule can be put into place among the parties.

2.      When the Agreement was executed and the Motion was filed, no proofs of claim were on file and the claims bar date was still almost two weeks away.  At that time, the Claridge Parties and the Creditors were identically situated as parties-in-interest who had yet to file proofs of claim in this Chapter 7 case.

3.      The history of the negotiations between the various parties related to the Transaction indicates a lack of good faith.  As more specifically set forth below, the Trustee failed to obtain a higher offer from the Creditors before signing the Agreement, no bidding procedures have been approved and the Trustee has no ability to accept higher and better offers under the Agreement.

4.      The Creditors understand that the Claridge Parties made an initial offer for the assets being sold and the Creditors responded with an offer that was substantially larger.  The Creditors also understand that the Trustee at some point received an offer that was slightly higher than the Creditors' offer.

5.      On the morning of February 27, 2015 - the business day before the Motion was filed (and the same day that the Agreement was dated and apparently signed), counsel for the Trustee sent a message to counsel for the Creditors, "reaching out to you to inquire whether your clients are willing to proceed with a settlement" on terms that would have been substantially larger and materially better than the Agreement because according to his counsel, "we have gotten hung up on certain issues" with the Claridge Parties.  That afternoon, counsel for the Creditors responded "I have had a chance to discuss your proposal with them and they are interested in pursuing it. Please provide a draft settlement agreement at your earliest convenience."

6.      It is now obvious that a draft was readily available and could have been provided in short order.   However, no draft agreement was ever provided and no response was ever received from counsel for the Trustee.   Instead and inexplicably, the Creditors learned that the Agreement was executed on February 27 when the Motion was filed on March 2, the next business day.

**The Trustee's "Solicitation for Additional Offers"**

7.      Paragraph 31 of the Motion refers to the possibility of submitting additional offers to the Trustee on or before the objection deadline for what would appear to be an unapproved, informal and unsupervised of auction by the Trustee.

8.      The Motion conveniently overlooks paragraph 6 of the Agreement which provides (in its entirety):

6.      This    Agreement    constitutes    the    entire    agreement    and understanding between the Parties relating to the subject matter contained here, and this Agreement *may not be altered, amended, or modified in any respect or particular whatsoever*, except by a writing duly executed by the Parties. (emphasis supplied)

9.      Unlike other sale contracts that this Court regularly considers, the Agreement does not contain any provision or process for others to submit higher or better offers.  Instead, paragraph 6 of the Agreement actually precludes the "Solicitation" that the Motion suggests.

10.     The Trustee's proposed solicitation procedures are also disingenuous. The Trustee has already shown that he is not interested in hearing higher and better offers.  If he was, he would have continued to engage with the Creditors on February 27 knowing that the Creditors

had already topped the Claridge Parties' proposal once before and indicated their willingness to proceed based on the terms his attorney suggested.

11.     The "Solicitation" highlights the Trustee's attempt to favor the Claridge Parties at the expense of all other parties-in-interest in this case.  The Trustee is not bound to accept a higher or otherwise better offer for the assets being transferred under the Agreement.  The Creditors, having already topped a proposal by the Claridge Parties once, had requested specific terms for a substantially higher and better Transaction only to be ignored. Given their experience, the Creditors have no confidence in the Trustee's ability to fairly and impartially evaluate competing proposals for the proposed Transaction. Stated differently, the Creditors (and Court) cannot divine what the Trustee means when he says in the Motion that he "might" consider "similar terms to the Agreement."

12.     This is especially important in this case because the terms of the Agreement would dismiss with prejudice certain claims in the New York litigation against the Claridge Parties rather than selling those claims to the highest bidder to maximize the value to all parties-in-interest.  It appears as if the Claridge Parties only care about the dismissal of claims against themselves, not maximizing value for the Estate.  This aspect of the proposed Transaction is as subtle as it is significant since it would not maximize value for the Debtor's interest in the New York litigation.  Creditors believe the claims against the Claridge Parties should be sold, rather than be dismissed with prejudice to maximize value for the Estate.

13.     Also, as noted above, the Trustee's actions, in not accepting a higher offer from the Creditors, show that he is either unable or unwilling to be an "honest broker" with regard to selling assets for a higher value and greater benefit for the Estate.  Having solicited and then disregarded the Creditors' proposal out of hand that would have been materially better, the

Trustee now seems to advocate an auction that is precluded by the Agreement. The Agreement precludes the Trustee from receiving any bids - especially "sealed bids" and the Trustee's actions have caused the Creditors to lose faith in his ability to fairly and impartially evaluate and determine what constitutes the highest and best proposal.

## Inherent Inconsistencies are Troublesome

14.     Paragraph 18 of the Motion claims that, "Upon approval and consummation of this Agreement, all of the Estate's assets will have been settled or assigned to the Creditors." The provision implies that, if the Agreement is consummated, there will be nothing left for the Trustee (or his counsel) to do and no assets left to administer.

15.     However, paragraph 3 of the Agreement provides (in pertinent part), the "[Claridge Parties] shall (i) support the closing of this bankruptcy case . . . and (ii) agree to pay the Trustee, out of any recovery or settlement of the Debtor Claims all fees and costs reasonably incurred by the Estate and approved by the Court relating directly or indirectly to the pursuit of the Debtor Claims in the Bankruptcy Court."

16.     These provisions are in irreconcilable conflict. If there are no further assets to administer, what would the Trustee be receiving payment for?  This inconsistency is also troublesome in in how it refers to payments to a Chapter 7 trustee without regard to the standards for compensation set forth in section 326 of the Bankruptcy Code.

## The Agreement Exposes the Estate to Substantial
## Administrative Expense Obligations

17.     The litigation, pending in the state courts of New York, is based, in substantial part, on the Claridge Parties' breach of an agreement with the Creditors (among others).[2]

---

[2]   The agreement in litigation in New York is highly confidential and the litigation is filed under seal. The Trustee, having been in position for almost one year and negotiating to dispose of rights in that litigation, would be familiar with that agreement. The Creditors can provide a copy of that agreement to the Court for an in camera review.

Obviously, the Trustee should be familiar with the claims and defenses in the New York action in which the Debtor is a plaintiff and which is identified in the Agreement and Debtor's Schedules. The Trustee must know that the gravamen of the Complaint in the New York is that certain of the Claridge Parties colluded with Alpha Beta to assert claims against the Creditors, thereby causing Alpha Beta to breach its Confidential Settlement Agreement ("**CSA**") with the Creditors. Inexplicably, the Trustee has done the exact same thing – colluding with Alpha Beta and the remaining Claridge Parties in connection with the assertion of claims against the Creditors.

18.    The Trustee, by executing the Agreement with the Claridge Parties, is inducing new breaches of that agreement thereby exposing the Estate to substantial exposure as a result of his tortious interference with the CSA - including inducing them to sign the Agreement.

19.    It is important to note that the Trustee's acts of inducing the entry into the Agreement, signing the Agreement and seeking its approval are each separate and distinct acts of tortious interference with the CSA the damages for which only increase the longer the Agreement is not repudiated by the Trustee.

20.    The Trustee's actions with respect to the Claridge Parties and the New York litigation by definition all occurred post-petition. As such, the liabilities created from those actions are post-petition liabilities allowable under section 503 of the Bankruptcy Code and will likely render the damages from the tortious interference to be an administrative expense liability rather than providing assets to the Estate.

21.    Additionally, the Claridge Parties are precluded from entering into the Agreement by the CSA. 28 U.S.C. § 959(b) provides, in pertinent part, "a trustee . . . appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his

possession as such trustee . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." The provisions of the CSA that preclude the Claridge Parties from executing the Agreement likewise preclude the Trustee from attempting to obtain this Court's approval of the Agreement.

<u>**The Agreement Wrongfully Abdicates Trustee Rights and Powers**</u>

22.    Paragraphs 2 and 3 of the Agreement would, if approved, purport to enable the Claridge Parties to take action solely for their benefit while using the avoidance powers (referred to as "Debtor Claims" in the Agreement) vested by the Bankruptcy Code solely and exclusively with a bankruptcy trustee.

23.    While such a transfer might be contemplated in a Chapter 11 case (see 11 U.S.C. § 1123(a)(5) and (6)), Chapter 7 of the Bankruptcy Code, neither envisions nor contemplates any successor to or assignee of the bankruptcy trustee with respect to any avoidance actions "assigned by" a chapter 7 trustee.

<u>**Reservation of Amendment Rights**</u>

24.    The proposed Transaction is alleged to allow the Debtor's case to be closed, and the Estate's assets distributed, swiftly. (<u>See</u> Agreement, Paragraph 3; Motion, Paragraphs 17 - 18)  However, another provision of the Agreement specifically prohibits the Trustee from even seeking to close the Chapter 7 case for more than one year (on or after April 7, 2016 at the very earliest).  This provision, standing by itself, proves that there is no exigency in the approval process for the Motion.

25.    As noted above, discovery is necessary to determine the extent to which the Claridge Parties and the Trustee's actions in this case lack good faith.  The Creditors have

simultaneously herewith commenced discovery from the Trustee and Claridge Parties. Once that discovery has been completed, this Objection will be amended or supplemented to identify additional bases for the Agreement to be rejected.

26.     It should be noted that the Claridge Parties include law firms as parties that made the offer to the Trustee and signed in their individual capacities rather than as counsel. As such, the law firms (and their attorneys) have entered into a proposed transaction with the Trustee that would subject them to discovery in their individual (rather than any representative) capacities. Accordingly, there is no attorney/client privilege with respect to the negotiation and drafting of the Agreement or their communications among the Claridge Parties. It is foundational that a party is not permitted to use the attorney-client privilege as both a sword and a shield. *In re Lott*, 139 F. App'x 658, 660 (6th Cir. 2005) ("[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. 'The attorney-client privilege cannot at once be used as a shield and a sword.'") quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Conversely, where a litigant uses the attorney-client privilege to prevent an adversary's inquiry regarding the content of communications with counsel, he is not permitted to use the substance of those communications to support claims at trial. *See In re Residential Capital, LLC*, 491 B.R. 63, 72 (Bankr. S.D.N.Y. 2013) ("[A]fter having asserted the attorney-client privilege throughout discovery, the Debtors cannot now introduce the substance of whatever advice it sought and received . . . .").

27.     In *In re Residential Capital*, a debtor sought court approval of a settlement with certain parties under Rule 9019. 491 B.R. 63, 65 (Bankr. S.D.N.Y. 2013). In the discovery phase leading up to the hearing on its 9019 motion, the debtor claimed privilege throughout its document productions and depositions. *Id.* In deposition, the debtor's CEO was instructed by

counsel not to reveal the substance of any of the communications forming the basis for the approval of the settlement, including legal defenses, liabilities, operation of the underlying agreements, and other related issues. *Id.* Objectors to the settlement argued that the debtor should be precluded from introducing the substance of the advice of its counsel because the debtor had claimed attorney client privilege over that advice throughout the discovery period. *Id.* The court agreed, and ruled that "A court should exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege." *Id.* at 69.

28.    As in *Residential Capital*, here, the Trustee and other signatories should not be permitted to introduce evidence or argument regarding its analysis of the probability of success in the litigation and the complexity, expense, inconvenience and delay attending litigation of those claims purportedly being resolved by the Agreement.

### Authorities in Support of Preliminary Objection

29.    The Trustee is the representative of the estate and owes his fiduciary duties to the creditors as a whole, not to any particular creditor. *See Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) ("[A] trustee has a fiduciary relationship with *all* creditors of the estate.") (emphasis in original); *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354-55 (1985) (noting trustee's fiduciary duties run to shareholders as well as to creditors); *Kusch v. Mishkin (in re Adler, Coleman Clearing Corp.)*, 1998 Bankr. LEXIS 1076 (Bankr. S.D.N.Y. Aug. 24, 1998) ("A chapter 7 trustee's primary duty is not to any individual creditor or even any particular class of creditors, but to the estate as a whole."); *Germain v. Connecticut National Bank*, 998 V.2d 1323, 1330 n.7 (2d Cir. 1993) (chapter 7 trustee "is an officer of the court and owes a fiduciary duty both to the debtor and to the creditors as a group"). In preferring

the Claridge Parties over the Creditors, the Trustee is violating his fiduciary duty to the Creditors.

30.     The Trustee's actions also violate his duty under Section 704(1) of the Bankruptcy Code to maximize the value of any assets that can be monetized, investigate all sources of income for the estate and "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1); *see also* 6-704 Collier on Bankruptcy P 704.02 (16th Ed.) ("In short, it is the trustee's duty to both the debtor and the creditors to realize from the estate all that is possible for distribution among the creditors . . . .").

31.     Ostensibly, the Agreement is attempting to preclude consideration of other offers which may be in the best interest of the estate. Such a limitation in unenforceable. In *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996), for example, the court held that a chapter 7 trustee was not required to champion a motion to approve a settlement stipulation that was no longer in the best interest of the estate. In *Martin*, the trustee settled certain pending state court litigation. After entering into the settlement agreement, the trustee was made aware of changed circumstances in the state court litigation that rendered the proposed settlement no longer in the best interest of the estate. On the basis of the changed circumstances, the trustee did not argue in favor of the proposed settlement but did not withdraw it. The bankruptcy court did not approve the proposed settlement based on evidence that the proposed settlement was no longer in the best interest of the estate. The Third Circuit upheld the bankruptcy court's rejection of the proposed stipulation, noting:

> Although a party to the stipulation, the trustee was not bound to vigorously urge the court to accept it in light of changed circumstances that added $150,500 to the corpus of the bankruptcy estate. Indeed, had she done so, a serious question of breach of a fiduciary responsibility to all creditors would have arisen.

91 F.3d at 395. Recognizing the trustee's conflict, the Third Circuit noted that Rule 9019 gives the bankruptcy court the responsibility for approving settlements and that "the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *Id.* at 393; see also *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (approval of a settlement pursuant to Bankruptcy Rule 9019 is committed to the discretion of the court).

Further, the Trustee has the burden to establish that a proposed settlement under 9019(a) is fair and appropriate. *See, e.g., Key3Media*, 336 B.R. at 94; *In re Zambrano Corp.*, 2014 Bankr. LEXIS 593 (Bankr. W.D. Pa. 2014) (Rule 9019(a) motion denied where chapter 7 trustee did not meet her burden to show proposed settlement was in the best interest of creditors). The evidence submitted in support of a 9019(a) settlement must be detailed and must provide the Court with enough information to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). For example, in *In re Spansion, Inc.*, the court denied a settlement under Rule 9019 where the debtors failed to provide detailed information regarding the likelihood of success on the claims being settled, and the complexity, expense, inconvenience and delay attending litigation of those claims. *In re Spansion, Inc.*, 09-10690 (KJC), 2009 WL 1531788 (Bankr. D. Del. June 2, 2009). In considering these factors, the court noted that "the Debtors have provided little information as to the specifics of the Actions to provide a basis for evaluating the strengths and weaknesses of the litigation. . . . This likewise makes it difficult to conclude that the settlement is preferable to the expense, inconvenience and delay of litigation." *Id.* at *7-*8. In the absence of sufficient evidentiary support, the court declined to approve the settlement. *Id.* at *9. Similarly, here the Agreement cannot be approved

because Trustee has not provided any evidence to support approval of the Agreement under Rule 9019(a). Here, the Agreement is not in the best interest of the Estate and as such, the Agreement cannot be approved.

## Conclusion

The Creditors respectfully request that the Court defer consideration of the Motion to allow for discovery regarding the actions by the Trustee and Claridge Parties in this matter to conclude, ultimately deny the Motion and grant the Creditors such other and further relief to which they might be entitled.

Dated: March 12, 2015  
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

William E. Chipman, Jr. (No. 3818)  
1007 North Orange Street, Suite 1110  
Wilmington, Delaware 19801  
Telephone:    (302) 295-0191  
Facsimile:    (302) 295-0199  
Email:    chipman@chipmanbrown.com

-and-

John D. Penn  
**PERKINS COIE LLP**  
500 North Akard Street, Suite 3300  
Dallas, Texas 75201  
Telephone:    (214) 965-7700  
Facsimile:    (214) 965-7784  
Email:    jpenn@perkinscoie.com

*Counsel for Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P., Pursuit Capital Management Fund I, L.P.*