## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 7 |
| | : |
| PURSUIT CAPITAL MANAGEMENT, LLC, | : |
| | : Case No. 14-10610 (LSS) |
| Debtor. | : |
| | : **Hearing Date: April 2, 2015 at 2:00 p.m.** |
| | : **Objection Deadline: March 31, 2015 at 4:00 p.m.** |

## MOTION OF JONATHAN HARRIS, ESQ. AND THE SCHNEIDER PARTIES FOR AN ORDER QUASHING THE SUBPOENA SERVED ON JONATHAN HARRIS, ESQ. AND THE SUBPOENA PURPORTEDLY SERVED ON LILLIAN SCHNEIDER, AND FOR A PROTECTIVE ORDER PREVENTING FURTHER SERVICE OF SUBPOENAS ON THE HARRIS LAW FIRM AND THE SCHNEIDER PARTIES ABSENT PRIOR COURT APPROVAL

Jonathan Harris, Esq. ("Attorney Harris") of Harris, O'Brien, St. Laurent & Chaudhry, LLP (the "Harris Law Firm"), Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, Lillian Schneider, and the Estate of Leonard Schneider (collectively, the "Schneider Parties"), by and through undersigned counsel, hereby file this motion seeking: (1) an order quashing the subpoena served on Attorney Harris on March 13, 2015 and the subpoena purportedly served on Lillian Schneider on March 16, 2015, pursuant to the Federal Rule of Bankruptcy Procedure ("FRBP") 9016 and Federal Rule of Civil Procedure ("FRCP") 45(d); (2) costs and sanctions including reasonable attorney fees pursuant to FRCP 45(d)(1); and (3) a protective order barring Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P. (the "Objecting Parties") from further efforts to subpoena Attorney Harris, the Harris Law Firm, and the Schneider Parties (collectively, the "Moving Parties") absent prior Court approval, pursuant to FRBP 9014, 7026, and FRCP 26(c).

The Objecting Parties have initiated a contested matter against the Chapter 7 Trustee, Jeffrey L. Burtch, (the "Trustee") by objecting to a proposed settlement reached between the Schneider Parties, the Harris Law Firm, Alpha Beta Capital Partners, L.P. ("Alpha Beta"), Alpha Beta's counsel, Reed Smith, LLP and Trustee, on behalf of the Estate of the Debtor, Pursuit Capital Management, LLC (the "Debtor") (the "Contested Matter").    The Objecting Parties allege that the Trustee has acted in bad faith by, among other things, entering into that settlement agreement rather than engaging in continued negotiations with the Objecting Parties.    The Objecting Parties attach on the Trustee is baseless, as the Trustee has provided any person, including the Objecting Parties, a further opportunity to submit a competing bid for the settlement assets prior to the Court ruling on the Trustee's motion seeking the Court's approval of the settlement.

Under the guise of the Contested Matter, the Objecting Parties have served the Schneider Parties' counsel, Attorney Harris of the Harris Law Firm, and purportedly served Lillian Schneider, a recently widowed woman in her 80's, with subpoenas that seek document production and depositions.    The subpoenas, which provide less than five days notice to produce documents, seek to impose an undue burden as the information sought is irrelevant, privileged, available from a more convenient source, or some combination thereof.    Simply put, the subpoenas are designed to harass the Schneider Parties and the Harris Law Firm rather than aid in the discovery of relevant information.

In support of this motion, the Moving Parties aver as follows:

118117038_1

**Jurisdiction**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. 1334.  This matter is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A).  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. 1408 and 1409.

2.      The statutory predicates for relief sough herein are FRBP 9014, 9016, 7026 and FRCP 26 and 45.

**Background**

3.      The Schneider Parties are investors and limited partners in Pursuit Capital Management Fund I, L.P. (the "Partnership"). Pursuit Capital Management, LLC, the Debtor, is the general partner of the Partnership.

4.      In May 2012, the Harris Law Firm, on behalf of the Schneider Parties, filed an arbitration complaint against the Debtor. The arbitration resulted in an award in June 2013 to the Schneider Parties of approximately $2.7 million for the Debtor's breach of its fiduciary duty, looting, and self-dealing, as well as the Debtor's "failures and refusals to honor its own promises and th[e] Tribunal's orders."  A second phase of the arbitration resulted in a further finding that the Debtor improperly misappropriated approximately $2.3 million in funds belonging to the Schneider Parties, thus, bringing the total owed by the Debtor for wrongful conduct to approximately $5 million.

5.      Those awards were confirmed and converted to judgments against the Debtor in New York Supreme Court on March 21, 2014.

6.      Subsequent to the initiation of the arbitration but prior to the issuance of these judgment, on July 18, 2013, the Debtor, and several entities controlled by the insiders of the Debtor, Anthony Schepis and Frank Canelas, including Pursuit Opportunity Fund I, L.P., Pursuit

Capital Management Fund I, L.P. and Pursuit Capital Management LLC ("the "Pursuit Entities") filed suit in New York Supreme Court alleging that the Schneider Parties and the Harris Law Firm tortiously interfered with a confidentiality and non-assistance clause of a settlement agreement entered into between the Pursuit Entities, another investor in the Partnership, Alpha Beta Capital Partners, L.P. ("Alpha Beta"), and Alpha Beta's counsel, Reed Smith, LLP (the "New York Action").  That suit also alleges that Alpha Beta and Reed Smith breached the settlement agreement at issue by Reed Smith having discussions with the Harris Law Firm.

7.      The Complaint in the New York Action alleges that the Harris Law Firm, on behalf of the Schneider Parties, obtained information from Alpha Beta, through conversations with Reed Smith, that led to the Schneider Parties' success at arbitration.  The Complaint in that matter fails to set forth what that information was or how it led to the Schneider Parties' award. Additionally, the Harris Law Firm and the Schneiders have never been provided a copy, nor have they ever seen, the settlement agreement at issue.

8.      On April 7, 2014, the Debtor commenced this case, to avoid the consequences of the arbitration awards to the Schneider Parties, by filing a voluntary petition under Chapter 7 of the Bankruptcy Code.

9.      The only assets listed on the Debtor's Bankruptcy Schedule B are: (1) the claims asserted in the New York Action; and (2) potential indemnification claims against Pursuit Capital Management Funds I, L.P. (the "Indemnification Claims").  Those assets are listed as having "unknown" value.  See Court Docket Document #9.

10.     Additionally, a footnote in the Statement of Financial Affairs notes that the income for calendar year 2011, totaling $645,571.22, was distributed to the Debtor's members "in the ordinary course of business on 1/16/13." (the "Potential Avoidance Claim").  The

4

Schneider Partites believe this transfer, which was made in direct contradiction to representations made in the arbitration, to be clearly a fraudulent conveyance for the benefit of insiders Anthony Schepis and Frank Canelas.

11.     The Schneider Parties, and the Harris Law Firm, believe the Debtor may have additional rights and claims against Schepis and Canelas and affiliated parties related to attempts to secret assets to avoid the Schneider Parties' judgment (the "Debtor Claims").

12.     Furthermore, while the Debtor's representative has denied that the Debtor has any interest in a separate ongoing litigation captioned Pursuit Partners, LLC v. UBS AG, D.N.X 08-CV-4013452 S (Conn. Super. Ct.) (the "UBS Claim"), the Schneider Parties believe the Debtor does in fact have an interest in that litigation.

13.     After arm's length negotiations with the Trustee, the Schneider Parties and Alpha Beta entered into an agreement with the Trustee for the Estate of the Debtor to settle, transfer and assign the claims, rights, and interests described above (the "Settlement Agreement").

14.     On March 2, 2015, the Trustee moved for an "Order Approving Agreement to Settle, Transfer and Assign Certain Claim, Rights and Interests" (the "Trustee's Motion").  That motion is on the Court's Docket as Document # 66.  That motion sets forth the deadline to object to the Settlement Agreement as March 19, 2015.   The hearing date on the motion is now scheduled for April 7, 2015.

15.     The Trustee's Motion sets forth under a section titled "Solicitation of Additional Offers," ¶ 31:

> As an additional test of the fairness of the proposed Agreement, the Trustee will consider additional proposals for assets on similar terms to the Agreement through the date by which objections are due to this Motion.  If an additional proposal is received by the Trustee in writing on or before the objection deadline that is higher than the Settlement Payment, the Trustee will request that all

5

bidders submit their last, best and final written proposals by sealed bid no later than the date that is three business days before the hearing date for this Motion.

16.     In response to the Trustee's Motion, on March 13, 2015, Schepis, Canelas, and entities Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P. (the "Objecting Parties") filed "Preliminary Objection to Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests" (the "Objections"). That document is on the Court's docket as Document # 67.

17.     The Objections claims that the Trustee engaged in bad faith by not engaging in continued negotiations with the Objecting Parties and accepting the Schneider Parties' and Alpha Beta's offer for the assets covered by the Settlement Agreement. While the Objecting Parties indicate that they were interested in making a "larger and materially better" offer, the Objections do not claim that such an offer was in fact made[1]. Furthermore, it is our understanding from conversations with the Trustee's counsel that no subsequent offer, or promise to return funds taken from the Estate, has been made by the Objecting Parties.

18.     The Objecting Parties argue that the Settlement Agreement does not allow for the submission of additional bids. However, as provided in the Trustee's motion, additional bids can be accepted as the Court must approve of the Settlement Agreement prior to it becoming effective. See 11 U.S.C. 363 and FRBP 9019. As such, the terms of the Settlement Agreement are not in effect and the Trustee is free to continue to accept bids as described in the Trustee's Motion.

19.     The Objecting Parties, rather than submitting a higher bid, or returning the money taken from the Estate by Schepis and Canelas, and using that as the basis for the objection,

---

[1] A good starting point would be the Objecting Parties to tender a bid equivalent to the funds they have fraudulently transferred from the Estate.

disingenuously claim that discovery is necessary to look into the process of how the Settlement Agreement was reached.

20.     Under this subtext, on March 13, 2015, the Objecting Parties served Attorney Harris of the Harris Law Firm with a subpoena commanding the production of documents for inspection and copying on March 18, 2015 (5 days later) and for Attorney Harris to appear for a deposition on March 24, 2015 (the "Harris Subpoena").  A copy of the Subpoena is attached hereto as Exhibit 1.

21.     Additionally, the Objecting Parties claimed to have served Lillian Schneider on March 16, 2015[2] with a subpoena commanding the production of documents for inspection and copying on March 18, 2015 (2 days later) and for Lillian Schneider to appear for a deposition on April 2, 2015 (the "Lillian Subpoena").  A copy of the Subpoena is attached hereto as Exhibit 2.

22.     The Harris Subpoena and the Lillian Subpoena (collectively the "Subpoenas") contain identical demands for production.

23.     Based on information and belief, the Objecting Parties have attempted or will attempt service of similar subpoenas on the additional Schneider Parties.

24.     Beyond the demand for Attorney Harris and Lillian Schneider to appear for depositions, the Subpoenas contains five requests for production ("Requests 1-5"):

1)      All Documents Concerning Communication between the Trustee and one or more of the Signatories [Signatories is defined as all parties to the Settlement Agreement].

2)      All Documents (including Communications) Concerning unexecuted drafts of the Agreement, including any Document containing or referring to the "Indemnification Claims", "Potential Avoidance Claim," "Debtor Claims," or "UBS Claim" as those terms are defined in the Agreement.

---

[2] Lillian Schneider avers that rather than the process server handing her the Lillian Subpoena, he threw it in her general direction, thus, failing to properly complete service.

118117038_1

3)      All Documents (including Communications) Concerning estimates of the value of to [sic.] the "Indemnification Claims", "Potential Avoidance Claim", "Debtor Claims" or "UBS Claim" as those terms are defined in the Agreement.

4)      All Documents (including Communications) Concerning estimates of the potential recovery for the Debtor's bankruptcy estate of to [sic.] the "Indemnification Claims", "Potential Avoidance Claim", "Debtor Claims" or "UBS Claim" as those terms are defined in the Agreement.

5)      All Documents Concerning Communications from April 7, 2014 to the present between or among one or more of the Signatories.

25.      On March 17, 2015, the Harris Law Firm sent counsel for the Objecting Parties a letter objecting to the portion of the Harris Subpoena seeking inspection and copying of documents pursuant to FRCP 45(d)(2)(B).  A copy of that letter is attached hereto as Exhibit 3.

26.      On March 18, 2015 counsel for the Objecting Parties responded to that letter, rejecting the Harris Law Firm's objections.  A copy of that letter is attached hereto as Exhibit 4.

27.      On March 20, 2015, after learning of the purported service of Lillian Schneider, the Harris Law Firm sent counsel for the Objecting Parties a letter objecting to the portion of the Lillian Subpoena seeking inspection and copying of documents pursuant to FRCP 45(d)(2)(B), and responding to the Objecting Parties March 18, 2015 letter  A copy of that letter is attached hereto as Exhibit 5.

28.      This is the second attempt by the Objecting Parties to compel the deposition of Attorney Harris.  Schepis and Canelas previously moved pursuant to FRBP 2004 to compel the deposition of Attorney Harris.   That motion was denied from the bench by Bankruptcy Judge Peter J. Walsh on October 24, 2014[3].

---

[3] FRBP 2004 allows the court, on motion of any party in interest, to order the examination of any entity if such examination relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor's estate...." The scope of this examination is broader than discovery permitted under the Federal Rules of Civil Procedure. In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 708 (Bankr.S.D.N.Y.1991); Matter of Wilcher, 56 B.R. 428, 433 (Bankr.N.D.Ill.1985) (Rule 2004 is "very broad" in that discovery requests "can

29.     Notably, the Objecting Parties counsel, Peter Cane, Esq., recently indicated that the Objecting Parties intend to file a new suit in New York State related to the actions of Alpha Beta and the Schneider Parties, and their respective counsels, in reaching the Settlement Agreement with the Trustee (the "Threatened Action").  Presumably, that suit will be based on a similar theory to the one forwarded in the New York Action and will be little more than a collateral attack in a new jurisdiction on the Settlement Agreement.

30.     The Objecting Parties are not seeking discovery relevant to the Contested Matter. They are seeking to harass the Schneider Parties and the Harris Law Firm and to obtain discovery related to the New York Action and the Threatened Action.

31.     The Moving Parties now move to quash the Subpoenas as the Subpoenas: do not seek relevant discovery; are not in compliance with FRCP 26; fail to allow a reasonable time to comply; require disclosure of privileged and protected matters; and subject the Moving Parties to an undue burden.  Furthermore, the Moving Parties seek a protective order barring the Objecting Parties from further service of subpoenas on the Moving Parties absent prior Court approval and for sanctions awarding costs and attorneys fees.

## ARGUMENT

## POINT I

## THE SUBPOENAS DO NOT COMPLY WITH THE APPLICABLE RULES, REQUEST IRRELEVANT DOCUMENTS AND TESTIMONY, AND SEEK TO IMPOSE AN UNDUE BURDEN

32.     FRBP 9014 and 7026 incorporate FRCP 26 for contested matters.   FRCP 26(b)(1), in setting for the scope of discovery, states:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter

---

legitimately be in the nature of a 'fishing expedition.' "). As such, this Court has already denied the Objecting Parties' attempt to compel the deposition of Attorney Harris under a broader standard than applicable here.

118117038_1

that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

33.     Rule 26(b)(2)(C) in turn provides that the Court is required to limit discover as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

34.     Stating similar factors to FRCP 26(b)(2)(C), FRCP 45 (d)(3) sets forth the standard for quashing or modifying a subpoena:

> A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>> (i) fails to allow a reasonable time to comply;
>> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>> (iv) subjects a person to undue burden.

35.     The evaluation of undue burden under FRCP 45 requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the

particularity with which the documents are described and the burden imposed." <u>Travelers Indem.</u> <u>Co. v. Metro. Life Ins. Co.</u>, 228 F.R.D. 111, 2005 WL 975661 (D. Conn. 2005) citing <u>United</u> <u>States v. Int'l Bus. Machines Corp.</u>, 83 F.R.D. 97, 105 (S.D.N.Y. 1979).

36.     Courts give special weight to the burden on non-parties of producing documents to parties involved in litigation. <u>See</u> <u>Cusumano v. Microsoft Corp.</u>, 162 F.3d 708, 717 (1st Cir.1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); <u>Heidelberg Ams., Inc. v. Tokyo</u> <u>Kikai Seisakusho, Ltd.</u>, 333 F.3d 38, 41-42 (1st Cir.2003); <u>see also</u> FRCP 45(c)(2)(B) ("an order to compel production shall protect any person who is not a party from significant expense...."). The Objecting Parties March 18, 2015 letter takes the position that the Moving Parties are non-parties to the Contested Matter.  <u>See</u> Exhibit 4.

37.     Rule 45(d)(1) requires a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The court "must enforce this duty and impose an appropriate sanction—which may include lost earnings or reasonable attorney's fees—on a party or attorney who fails to comply." Fed.R.Civ.P. 45(d)(1). Also, "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45[d](1)." <u>Hallamore</u> <u>Corp. v. Capco Steel Corp.</u>, 259 F.R.D. 76, 2009 WL 1883044 (D. Del. June 30, 2009) citing <u>CareToLive v. von Eschenbach</u>, 2008 WL 552431 at *3 (S.D.Ohio Feb. 26, 2008) (emphasis added)

38.     Furthermore, where a party seeks to depose opposing counsel a party seeking the deposition faces even a higher burden:

> Depositions of opposing counsel are disfavored. <u>United States v. Yonkers Board</u> <u>of Education</u>, 946 F.2d 180, 185 (2d Cir. 1991). However, courts will permit "the

deposition of opposing counsel only upon a showing of substantial need and only after alternative discovery avenues have been exhausted or proven impracticable." Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp., ITT, 125 F.R.D. 578, 593 (N.D.N.Y. 1989). The Eighth Circuit has allowed depositions of opposing counsel where "the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Shelton v. American Motors Corp., 805 F.2d 1323, 1327. See Gould v. Mitsui Mining & Smelting Co., 825 F.2d 676, 680 n. 2 (2d Cir.1987) (the Shelton Court's concern with the deposition of opposing counsel is "generally well taken").

In re Cnty. of Orange, 1997 WL 238623 (Bankr. S.D.N.Y. May 7, 1997)

39.    Here, the Subpoenas "should not have been issued" as they do not seek relevant discovery; are not in compliance with FRCP 26; fail to allow a reasonable time to comply; require disclosure of privileged and protected matters; and subject the Moving Parties to an undue burden.

*The Objections to the Trustee's Motion are Meritless*

40.    As, based on information and belief, the Objecting Parties have not submitted a bid for the rights and claims addressed in the Settlement Agreement, or offered to return the funds taken from the Estate, the Objecting Parties' Objections and demands for discovery are specious at best.

41.    The Trustee's Motion provides the Objecting Parties with a mechanism to bid on the rights and interests subject to the Settlement Agreement.  Any claim of bad faith by the Trustee is premature and not supported, as the Objecting Parties have not availed themselves of the opportunity to bid on the subject rights and interests or otherwise returned assets to the Estate.

*Requests 1 and 2 Seek Documents and Information That Can be Obtained from the Trustee*

42.    Even if the Court determined that the Objecting Parties' claim of bad faith by the Trustee was legitimate despite the Objecting Parties not submitting a competing bid, only Requests 1 and 2 for documents seeking communications with the Trustee and prior drafts of the Settlement Agreement could arguably be relevant to whether the Trustee acted in good faith.

43.    Nevertheless, even if Request "1" for communications with the Trustee was relevant, documents and testimony regarding those communications is available through a more convenient source in this matter, namely the Trustee himself.  Likewise, the Trustee would also possess and be able to produce drafts of the Settlement Agreement.

44.    It is axiomatic that the documents and information reflecting how the Trustee's decision was reached would be in the possession of the Trustee.  Efforts to obtain that information from other non-parties is unreasonably cumulative, as the information and documents can be obtained from some another source that is more convenient, less burdensome, and less expensive.

45.    As per the subpoena served on Attorney Harris, the deposition of opposing counsel is only appropriate upon a showing of substantial need and only after alternative discovery avenues have been exhausted or proven impracticable.  See In re Cnty. of Orange, 208 B.R. 117, 1997 WL 238623 (Bankr. S.D.N.Y. 1997).  The Objecting Parties cannot show substantial need, nor have they demonstrated that they cannot obtain the information from the Trustee.  As such, the deposition of Attorney Harris is inappropriate.

46.    Furthermore Attorney Harris will be in attendance at the April 7, 2015 hearing on the Settlement Agreement and at such time the Court may ask him any questions it believes are relevant.

13

47.    The Objecting Parties' attempts to serve and depose Lillian Schneider and the other Schneider Parties is nothing but harassment.  Lillian Schneider is a recently widowed woman is her 80's.  The Objecting Parties and their counsel are certainly aware that Lillian Schneider and the Schneider Parties have been represented through counsel in the Bankruptcy and that Lillian Schneider, nor any of the Schneider Parties, have ever communicated directly with the Trustee or his counsel.  As such, what information the Objecting Parties believe Lillian Schneider, or any of the other Schneider Parties, have that would lead to admissible evidence related to the Trustee's decision-making process in entering into the Settlement Agreement is completely unclear.  The Objecting Parties attempt to depose the Schneider Parties as it relates to whether the Trustee acted in good faith is baseless and designed to impose an undue burden and harass the Schneider Parties.

*Requests 2-5 Seek Material That is Irrelevant and Privileged*

48.    The Objecting Parties bad faith is further exemplified by the other four Requests. Requests 2, 3, and 4, seek documents related to the Harris Law Firm's and the Schneider Parties' internal view of the Claims.  Their views are not only irrelevant to whether the Trustee acted in good faith, but irrelevant.  The Trustee has made his own evaluation of the Claims at issue and whether the Schneider Parties' and the Harris Law Firm's views are the same or different has no relevance.[4]

49.    Furthermore, the requested documents are protected by the privileges protecting work product[5] and attorney-client communications.

---

[4] As stated by the Trustee, the Estate of the Debtor has no assets to administer the Estate or litigate the various claims. See Trustee's Motion ¶ 12.  As such, there is no opportunity for the Trustee to advance the Claims on behalf of the Debtor's Estate.

[5] The work-product rule is a qualified privilege codified in FRCP 26(b)(3).  Upjohn Co. v. United States, 449 U.S. 383, 398, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y.1993). The doctrine "shelters the mental processes of the attorney, providing a privileged area

50.     Procedures implementing the work product doctrine are incorporated into FRCP 26(b)(3), made applicable here by FRBP 7026.  Generally, ordinary work product may be obtained only upon a showing that "the party seeking the material has a substantial need of the materials in the preparation of the party's case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).  If that burden is met, the Court, in ordering discovery of the materials that are work product, "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney." Id. "Thus, under Rule 26(b)(3), the protection of mental impressions, conclusions, opinions and legal theories of an attorney is not qualified in the same manner as ordinary work product (which may be discovered upon the requisite showing of need and unavailability), and it appears that so-called 'opinion work product' may be accorded absolute protection." In re Commercial Fin. Servs., Inc., 247 B.R. 828, 2000 WL 385358 (Bankr. N.D. Okla. Feb. 18, 2000).

51.     Requests 2-4 seek documents related to prior drafts of the Settlement Agreement and documents related to the value and expected recovery in the "Indemnification Claims", "Potential Avoidance Claim", "Debtor Claims" and "UBS Claim".

52.     Any prior draft of the Settlement Agreement not submitted to the Trustee would be protected work product.  See  Andritz Sprout-Bauer, Inc. v. Beazer E., Inc., 174 F.R.D. 609, 635 (M.D. Pa. 1997) (prior drafts of report and similar documents are privileged).  Furthermore, any views of the Harris Law Firm regarding the value or potential recovery of the claims would be protected "opinion work product" as what is being requested is the conclusions and opinions

---

within which he can prepare his client's case." United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); See In re Circle K Corp., 199 B.R. 92, 1996 WL 450285 (Bankr. S.D.N.Y. 1996) aff'd, 1997 WL 31197 (S.D.N.Y. Jan. 28, 1997).

of legal counsel.   See In re Circle K Corp., 199 B.R. 92, 1996 WL 450285 (Bankr. S.D.N.Y. 1996) aff'd, 1997 WL 31197 (S.D.N.Y. 1997).

53.     Likewise, the Schneider Parties valuations of expected recovery would simply be a recitation of conversations they had with counsel and protected by the attorney client privilege. See SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467 (E.D. Pa. 2005); see also Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 416 (D. Del. 1992).   In other words, the Schneider Parties have not performed their own independent evaluation of the claims but instead have relied on their counsel to provide analysis and legal opinions on the various claims.   As such, information sought by the Lillian Subpoena is exclusively privileged attorney-client communications consisting of the analysis and legal opinions provided to the Schneider Parties by the Harris Law Firm.

*Request 5 is a Blatant Attempt to Obtain Information Related to Other Litigation*

54.     Request 5 seeks "All Documents Concerning Communications from April 7, 2014 to the present between or among one or more of the Signatories."   Request 5 reveals the Objecting Parties true motives in serving the Subpoenas.   The Objecting Parties are seeking discovery related to communications between the Schneider Parties, Alpha Beta, and their respective counsels, as the Objecting Parties' claims in the New York Action and the Threatened Action are based on the Objecting Parties' mistaken view that counsel for Alpha Beta and the Harris Firm are not allowed to communicate.

55.     These communications are in no way relevant to whether the Trustee acted in good faith.   This is simply an attempt by the Objecting Parties to use this Bankruptcy to obtain discovery in other matters.   This is a blatantly improper misuse of the Harris Firm's, the Schneider's , and the Court's time and resources.

*The Objecting Parties Seek to Impose an Undue Burden and as Such Must Be Sanctioned*

56.     "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45[d](1)." Hallamore Corp. v. Capco Steel Corp., 259 F.R.D. 76, 2009 WL 1883044 (D. Del. 2009).

57.     Rule 45(c) provides rules for the protection of individuals subject to subpoenas. Rule 45(d)(1) "authorizes the court to impose an appropriate sanction against any party that issues a subpoena, but in doing so, fails to take reasonable steps to avoid imposing an undue burden on the subpoenaed party." In re Circle K Corp., 199 B.R. 92, 102 (Bankr.S.D.N.Y.1996). The court has "discretion to impose sanctions which penalize the wrongdoer, deter future abuse and compensate the injured." Id.   Possible sanctions include "lost earnings and a reasonable attorney's fee." Fed.R.Civ.P. 45(d)(1); See Polo Bldg. Group, Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 547 (B.A.P. 9th 2000) ("Breach of the duty to avoid undue burden ... is enforced by exposure to a sanction that may include, but is not limited to, lost earnings and reasonable attorney's fees.").

58.     This rule requires the court to consider a two-part test: (1) "whether the subpoena imposed an undue burden" and (2) "if so, what, if any "reasonable steps" [where taken by the serving party] to avoid imposing such a burden." In re Faiella, 2008 WL 1790410, at *4-5 (Bankr. D.N.J. 2008) citing Molefi v. Oppenheimer Trust, 2007 WL 538547, at *3 (E.D.N.Y. 2007).   The burden falls "upon the serving party to prove that it has complied with this mandate." In re Faiella, 2008 WL 1790410, at *5 (Bankr. D.N.J. 2008)

59.     The FRCP 45 advisory notes (1991) provide as a potential example of an unduly burdensome request, one that requires the testimony of an adversary that is known to have no personal knowledge of matters in dispute.   Courts have found an undue burden existed where a

17

subpoena should never have been issued.  See  In re Shubov, 253 B.R.    540,

544, 547 (B.A.P. 9th Cir. 2000);  see also Molefi, 2007 WL 538547. An undue burden was also

found to exist where a court determined a subpoena was overly broad because it "requir[ed] a

non-party to sift through virtually every document in its files" instead of limiting the request to a

more narrow inquiry. Circle K Corp., 199 B.R. at 102. Additionally, an undue burden existed

where a subpoena required the production of documents within 48 hours. In re Digital Res.,

LLC, 246 B.R. 357, 373 (B.A.P. 8th Cir. 2000).

60.    Here, the Subpoenas purportedly served, or to be served, on the Schneider Parties

knowing seek testimony from individuals with no knowledge of the Trustee's mental

impressions or of the Trustee's basis for entering into the Settlement Agreement.  In fact, none of

the Schneider Parties have ever spoken with the Trustee or his counsel.  Additionally, for the

reasons detailed above, the Subpoenas should never have been issued as they seek irrelevant and

privileged information.

61.    Furthermore, and not previously highlighted, the Harris Subpoena seeks

document production in five days, while the Lillian Subpoena provides only two days to produce

documents.  While the Objecting Parties have claimed the short time frame was a result of the

March 26, 2015 hearing date on the Trustee's Motion, the Objecting Parties were free to bring a

motion seeking to adjourn the hearing date or otherwise extend the time.  Instead, the Objecting

Parties used the hearing date as an excuse to continue its harassment of the Schneider Parties.  As

such, imposing sanctions, including reasonable attorney fees associated with this motion, is

appropriate.

## POINT II

## A PROTECTIVE ORDER IS WARRANTED

62.     FRCP 26(c), which is incorporated by FRBP 9014 and 7026, sets forth the

standard for Protective Orders.

> (1) *In General.* A party or any person from whom discovery is sought may move
> for a protective order in the court where the action is pending—or as an
> alternative on matters relating to a deposition, in the court for the district where
> the deposition will be taken. The motion must include a certification that the
> movant has in good faith conferred or attempted to confer with other affected
> parties in an effort to resolve the dispute without court action. The court may, for
> good cause, issue an order to protect a party or person from annoyance,
> embarrassment, oppression, or undue burden or expense, including one or more of
> the following:
>
> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party
> seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or
> discovery to certain matters;
> (E) designating the persons who may be present while the discovery is conducted;
> (F) requiring that a deposition be sealed and opened only on court order;
> (G) requiring that a trade secret or other confidential research, development, or
> commercial information not be revealed or be revealed only in a specified way;
> and
> (H) requiring that the parties simultaneously file specified documents or
> information in sealed envelopes, to be opened as the court directs.

63.     On March 16, 2015, and March 17, 2015, the Moving Parties made good faith

efforts to attempt to confer with the Objecting Parties' counsel regarding the Subpoenas;

however, the Objecting Parties insisted on including an attorney on the call who had not

appeared in this matter at the time the Subpoenas were served, and who was not involved in the

issuing of the Subpoenas.  That attorney, Peter Cane, Esq., who is Objecting Parties counsel in

the New York Action has a long history of abusive and unprofessional behavior in that matter.

Upon Attorney Harris informing the Objecting Parties that the phone call was finished, as he

Case 14-10610-LSS    Doc 79    Filed 03/23/15    Page 20 of 22


would not discuss the matter with an attorney who had not issued the Subpoenas, Mr. Cane threatened Attorney Harris stating "he was finished."

64.     Additionally, a letter objecting to the Harris Subpoenas was sent on March 17, 2015.  See Exhibit 3.  The Objecting Parties responded to that letter on March 18, 2015 disagreeing with the statements contain in the March 17, 2015 letter.  See Exhibit 4.  On March 20, 2015, the Harris Law Firm sent a second letter addressing the Lillian Subpoena directly, addressing the issues raised in the Objecting Parties' March 18, 2015 letter, and demanding the Lillian Subpoena be withdrawn.  See Exhibit 5.  The Moving Parties have not received a response to the March 20, 2015 letter.

65.     Upon a showing of a lack of actual need and that the information sought is not relevant, a protective order is appropriate.  See In re Lazaridis, 865 F.Supp.2d 521, 2011 WL 3859919 (D.N.J. Sept. 1, 2011).

66.     Considering this is the second baseless attempt by members of the Objection Parties to compel the deposition of Attorney Harris, it is appropriate for the Court to issue a protective order to protect Attorney Harris from further annoyance and expense.

67.     As detailed above, the Subpoenas are not issued in good faith and are designed to impose an undue burden on the Moving Parties.  As such, a protective order requiring prior Court approval of any subpoenas to be served on the Attorney Harris, the Harris Law Firm, and the Schneider Parties is appropriate.

WHEREFORE, the Moving Parties respectfully request that this Court enter an Order: 1) quashing the subpoena served on Attorney Harris on March 13, 2015 and the subpoena purportedly served on Lillian Schneider on March 16, 2015, pursuant to; (2) imposing sanctions and awarding costs including reasonable attorney fees pursuant to FRCP 45(d)(1); and (3)

118117038_1

establishing a protective order barring Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P. from further efforts to subpoena Attorney Harris, the Harris Law Firm, and the Schneider Parties absent prior Court approval.

Dated: March 23, 2015

Respectfully submitted,

DILWORTH PAXSON LLP

/s/ Thaddeus J. Weaver

Lawrence G. McMichael
Christie C. Comerford
Jesse N. Silverman (DE #5446)
Thaddeus J. Weaver (DE #2790)
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7284
Facsimile: (215) 575-7200

-and-

Jesse N. Silverman (DE #5446)
Thaddeus J. Weaver (DE #2790)
One Customs House, Suite 500
704 King Street
Wilmington, DE 19801
Telephone:  (302) 571-9800
Facsimile:  (302) 571-8875

*Attorneys for Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, Lillian Schneider, the Estate of Leonard Schneider, Jonathan Harris, and Harris, O'Brien, St. Laurent & Chaudhry LLP*

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of March 2015, a true and accurate copy of the foregoing Motion for an Order Quashing the Subpoena Served on Jonathan Harris, Esq. and the Subpoena Purportedly served on Lillian Schneider, and for a Protective Order Preventing Further Service of Subpoenas on the Harris Law Firm and the Schneider Parties Absent Court Approval was served electronically upon the persons listed below through the Court's CM/ECF system.

| | |
|---|---|
| **Stuart M. Brown** | **Gregg M. Galardi** |
| DLA Piper LLP | DLA Piper LLP |
| 1201 North Market Street, Suite 2100 | 1251 Avenue of the Americas |
| Wilmington, DE 19801 | New York, New York 10020 |
| | |
| **Mark E. Felger** | **Jeoffrey L. Burtch, Trustee** |
| Cozen O'Connor | Cooch & Taylor |
| 1201 N. Market Street, Suite 1001 | 824 Market Street Mall, Suite 1000 |
| Wilmington, DE 19801 | P. O. Box 549 |
| | Wilmington, DE  19899 |
| | |
| **United States Trustee** | **Peter S. Cane** |
| 844 King Street, Room 2207 | Cane & Associates LLP |
| Lockbox #35 | 200 Park Avenue, 17th Floor |
| Wilmington, DE  19899-0035 | New York, NY 10166 |
| | |
| **William E. Chipman, Jr.** | **Justin Cory Falgowski** |
| Chipman Brown Cicero & Cole, LLP | Reed Smith LLP |
| The Nemours Building | 1201 North Market Street |
| 1007 North Orange Street, Suite 1110 | Suite 1500 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| | |
| **John David Penn** | **Richard A. Robinson** |
| Perkins Coie LLP | Reed Smith |
| 500 N. Akard, Suite 3300 | 1201 Market Street, Suite 1500 |
| Dallas, TX 75201 | Wilmington, DE 19801 |

 /s/ Stephanie Lisko
Stephanie Lisko, Paralegal