## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| PURSUIT CAPITAL MANAGEMENT, LLC | Case No.: 14-10610 (LSS) |
| Debtor. | **Objection Deadline: March 31, 2015, at 12:00 p.m.**<br>**Hearing Date: April 2, 2015, at 11:00 a.m.** |

## MOTION FOR AN ORDER QUASHING THE SUBPOENA SERVED ON REED SMITH, AS ALPHA BETA'S COUNSEL, AND FOR A PROTECTIVE ORDER PREVENTING FURTHER SERVICE OF SUBPOENAS ON ALPHA BETA AND REED SMITH ABSENT PRIOR COURT APPROVAL

Creditor Alpha Beta Capital Partners, L.P. ("Alpha Beta"), by and through the undersigned counsel, Reed Smith LLP ("Reed Smith"), respectfully submits this motion seeking (i) pursuant to Federal Rules of Civil Procedure ("FRCP") 26(c) and 45(d)(3)(A), incorporated by Federal Rules of Bankruptcy Procedure ("FRBP") 7026 and 9014, to quash the Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding) (the "Subpoena") issued on Reed Smith, Alpha Beta's counsel, by Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC ("PIM"), Pursuit Opportunity Fund I, L.P. ("POF"), and Pursuit Capital Management Fund I, L.P. ("PCM," and together with Schepis, Canelas, PIM and POF, the "Objecting Parties"), dated March 12, 2015, in the above-captioned bankruptcy action; (ii) costs and reasonable attorney fees pursuant to FRCP 45(d)(1); and (iii) a protective order barring the Objecting Parties from serving any further subpoenas on Alpha Beta or Reed Smith in this matter absent prior Court approval, pursuant to FRBP 9016 and 7026, and FRCP 26(c) and 45.

### JURISDICTION

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this case and this

Motion in this District is proper pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory predicates for relief sought herein are FRBP 7026, 9014 and 9016, and FRCP 26 and 45.

### FACTUAL BACKGROUND

3.      Beginning in May 2007, Alpha Beta invested approximately $33 million in PCM and $21 million in POF.  Pursuit Capital Management, LLC (the "Debtor") was, at least during the course of Alpha Beta's investment, the general partner of POF and PCM.

4.      In or about June 2010, Alpha Beta initiated an action in New York Supreme Court against, among others, the Debtor's investment manager, PIM, as well as PIM's principals Schepis and Canelas – all of whom are alleged to be creditors in the instant bankruptcy.  Schepis and Canelas have at all relevant times controlled the Objecting Parties and related entities, Through that action, Alpha Beta sought to recover over $40 million of losses it sustained as a direct result of the bold and blatant fraud engaged in by PIM and its control parties in violation of their duties to Alpha Beta as an investor in POF and PCM.  Concurrently therewith, Alpha Beta initiated a related arbitration proceeding against the Debtor in its capacity as the general partner of POF and PCM.   This arbitration was commenced against the Debtor for its role in the fraud perpetrated upon Alpha Beta.

5.      In or about April 2011, the parties to the New York litigation and related arbitration proceeding resolved their claims and entered into a certain Confidential Settlement Agreement and Mutual Release (the "CSA").  The Objecting Parties in the instant bankruptcy are parties to the CSA.

6.      The Objecting Parties have outright refused to comply with their obligations under the CSA.  As a result, in or about April 2013, Alpha Beta commenced an action against the

Objecting Parties for breach of the CSA (the "Alpha Beta Action").

7.    While the Alpha Beta Action was underway, other investors in PCM, namely Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider, and Lillian Schneider (collectively, the "Claridge Parties"), obtained a decision in an arbitration they commenced separately against the Debtor for breach of contract, breach of fiduciary duty, self-dealing and breach of obligations to provide information.  In that decision, the arbitrator found that the Debtor – while under the control of Schepis and Canales – had engaged in multiple intentional breaches of fiduciary duty, wrongful acts of self-dealing, conversion of funds belonging to PCM and its investors, and breaches of contract.  This award was later confirmed by the New York Supreme Court.

8.    In addition to the numerous breaches of duty identified in the arbitration award, in the fall of 2013, as part of the action by the Claridge Parties to confirm the award, the New York Supreme Court found, in connection with a motion for a temporary restraining order, that Schepis and Canelas improperly caused monies of PCM to be transferred from PCM to the Debtor, and then to their own accounts, thereby depleting nearly the entirety of the Debtor's assets.  The Court found that a temporary restraining order and injunctive relief were necessary to prevent Schepis and Canelas from further syphoning investor assets.

9.    Apparently as retaliation for the actions commenced by Alpha Beta and the Claridge Parties, on July 18, 2013, in an action styled *Pursuit Investment Management, LLC, et al. v. Alpha Beta Capital Partners, L.P., et al.* (Index No. 652457/2013) (the "Pursuit New York Action"), the Objecting Parties commenced an action in New York Supreme Court, wherein they have advanced unfounded and factually unsupported allegations that Alpha Beta, and its attorneys, violated the CSA by disclosing its confidential terms to the Claridge Parties and their attorneys.  The Objecting Parties further claim that the Claridge Parties and their attorneys

tortiously interfered with the CSA by knowingly inducing a breach of the CSA through the solicitation of confidential information.

10.     In an effort to avoid substantial outstanding obligations – namely, obligations to Alpha Beta and the judgment entered in favor of the Claridge Parties – the Debtor filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code on March 21, 2014. (D.I. 1, 3.)  On or about the petition date, Jeoffrey L. Burtch (the "Trustee") was appointed to serve as the Chapter 7 trustee for the Estate of the Debtor.  On the April 7, 2014, the Debtor filed its amended Chapter 7 Bankruptcy Schedules and the Statement of Financial Affairs.  (D.I. 9.)

11.     The Debtor's Chapter 7 Bankruptcy Schedules – which were prepared by Schepis and Canales – identify the following creditors as holding claims in the Debtor's estate: Alpha Beta, the Claridge Parties,[1] Schepis and Canelas.  Alpha Beta and the Claridge Parties are the only non-insider creditors of the estate.  Notably, Schepis and Canales failed to identify the claims of the other Objecting Parties in the schedules, and the only (vague) grounds for the supposed claim held by them is the existence of a "[p]otential indemnification claim pursuant to the Pursuit Capital Management Fund I, L.P. Amended and Restated Limited Partnership Agreement."  Yet, there are not indemnifiable claims or actions pending against them.

12.     The only assets listed by the Debtor in its Bankruptcy Schedules are (i) claims asserted in the Pursuit New York Action; and (ii) potential indemnification claims against PCM. These two assets are listed as having an "unknown" value.  (*See* D.I. 9.)

13.     Alpha Beta believes that the Debtor may have additional rights, claims and causes of action (including without limitation the right to recover fraudulent conveyance or other transfers made without value or for less than fair value) against Schepis and Canelas, as well as

---

[1]   The Claridge Parties and Alpha Beta are collectively referred to herein as the "Creditors."

entities owned or controlled by them.  For example, during a 341 meeting of creditors, Schepis, as the Debtor's representative, testified that the Debtor transferred its general partnership interest on the eve of bankruptcy to a new entity controlled by Schepis and Canelas, and owned no assets other than those disclosed in the Bankruptcy Schedules.

14.     In or about March 2015, the Objecting Parties filed proofs of claim.  In addition to the potential indemnity claim referenced above, the claims by PIM, POF and PCM seek amorphous and unexplained "contribution" from the Debtor for fees and expenses incurred in the Pursuit New York Action, even though the Trustee has not yet appeared or instructed counsel for the Objecting Parties to appear in that action.

15.     After arm's length negotiations, the Trustee, the Creditors, and their respective attorneys – Harris, O'Brien, St. Laurent & Chaudhry LLP (the "Harris Firm") and Reed Smith – reached an agreement to settle, transfer and assign certain claims of the Debtor on the terms and conditions set forth in the Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Settlement Agreement"), dated February 27, 2015.  The signatories to the Settlement Agreement are the Trustee, the Creditors, the Harris Firm and Reed Smith (collectively, the "Settling Parties").

16.     On March 2, 2015, the Trustee moved for an "Order Approving Agreement to Settle, Transfer, and Assign Certain Claims, Rights and Interests" (the "Trustee's Motion").  (D.I No. 66.)  The Trustee's Motion set the deadline to object to the Settlement Agreement as March 19, 2015.  The hearing date on the motion is now April 7, 2015.

17.     The Trustee's Motion provided, under a section titled "*Solicitation of Additional Offers*", that the Trustee would consider "additional proposals for assets through the date by which objections are due to this Motion."  That section goes on to  provide that if an additional

proposal is received that is higher than the Settlement Payment, "the Trustee will request that all bidders submit their last, best and final written proposals by sealed bid" by three days prior to the hearing date on the Motion.  (Trustee's Motion ¶ 31.)

18.     Rather than submitting a higher bid by the objection deadline, on March 12, 2015, the Objecting Parties filed their Preliminary Objection to the Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests (the "Objection").  (D.I 67.)

19.     In the Objection, the Objecting Parties claim that the Trustee engaged in bad faith by accepting the offer for the assets covered by the Settlement Agreement.  Specifically, the Objecting Parties assert that the Trustee "failed to obtain a higher offer" before signing the Settlement Agreement and claim that they intended to pay a substantially better price for the Debtor's assets.  Tellingly absent from the Objection, however, are any details surrounding the Objecting Parties' alleged "intention" to pay a price higher than that accepted by the Trustee. The Objecting Parties do not disclose the existence of any supposed offers made by them to the Trustee, nor do they state in any clear terms that their offer remains open.  Furthermore, we understand from counsel for the Trustee that the Objecting Parties have not made any actual offer to the Trustee, despite the fact that, as per the Trustee's Motion, the Settlement Agreement expressly provides for the submission of additional bids.  (Trustee's Motion ¶ 31.)

20.     Even if they had submitted a higher offer, however, the Trustee was not faced with a situation where he would be evaluation whether one offer was simply higher than another offer.  Rather, the Objecting Parties are the insiders who looted funds from the Debtor and its related entities and the Creditors are the entities who suffered from that looting.  The Settlement Agreement allows the Creditors to pursue claims to recover the funds which rightfully belong to

them.

21.     The Objecting Parties go even further in the Objection, however, by threatening suit against the Trustee for entering into the Settlement Agreement.  Specifically, the Objecting Parties argue that "[t]he Trustee, by executing the [Settlement] Agreement with the Claridge Parties, is inducing new breaches of the [CSA] thereby exposing the Estate to substantial exposure as a result of his tortious interference with the CSA – including inducing them to sign the [Settlement] Agreement."  (Objection ¶ 19.)  This argument ignores the fact that the Trustee now stands in the shoes of the Debtor, and that the Debtor is a signatory to the CSA and remains a plaintiff in the Pursuit New York Action.

22.     Nevertheless, counsel for the Objecting Parties recently informed counsel for the Settling Parties in no uncertain terms that the Objecting Parties intend to file a new suit in New York State court related to the actions of the Trustee, the Creditors, and their respective attorneys, in reaching the Settlement Agreement (the "Threatened Action").  Presumably, the Objecting Parties will assert claims similar to those asserted in the Pursuit New York Action.

23.     However, their egregious acts do not end there.  The Objecting Parties also are attempting to make a sham of the objection process, utilizing it as a means to obtain discovery from Reed Smith and others for use in other proceedings and claiming, baselessly, that such discovery is necessary in order to examine the Trustee's alleged bad faith.

24.     On March 12, 2015, the Objecting Parties issued the instant Subpoena, a copy of which is attached hereto as Exhibit A.  The Subpoena is addressed to Reed Smith, as counsel to Alpha Beta, and specifically commands that Panos Katsambas appear on April 1, 2015 at 9:00 a.m. for a deposition in New York.  Mr. Katsambas is a Reed Smith partner who works out of Reed Smith's London office, who resides in London, and who for all times relevant hereto has

served as counsel to Alpha Beta.

25.    In addition to the demand for deposition testimony, the Subpoena requests that Alpha Beta produce by March 18, 2015 at 2:00 p.m. – only *six (6)* days after service of the Subpoena – the following documents for inspection and copying:

**Request No. 1**:  All Documents Concerning Communications between the Trustee and one or more of the Signatories;

**Request No. 2**:  All Documents (including Communications) Concerning unexecuted drafts of the Agreement, including any Document containing or referring to the "Indemnification Claims", "Potential Avoidance Claim", "Debtor Claims" or "UBS Claim" as those terms are defined in the Agreement;

**Request No. 3**:  All Documents (including Communications) Concerning estimates of the value of the "Indemnification Claims", "Potential Avoidance Claim", "Debtor Claims" or "UBS Claim" as those terms are defined in the Agreement;

**Request No. 4**:  All Documents (including Communications) Concerning entities of the potential recovery for the Debtor's bankruptcy estate of the "Indemnification Claims", "Potential Avoidance Claim", "Debtor Claim" or "UBS Claim" as those terms are defined in the Agreement; and

**Request No. 5**:  All Documents Concerning Communications from April 7, 2014 to the present between or among one or more of the Signatories.

26.    On March 18, 2015, Reed Smith sent a response to the Subpoena to counsel for the Pursuit entities, objecting to the Subpoena because, among other things, the Subpoena (i) does not provide sufficient time to respond to the Subpoena; (ii) is overly broad and unduly burdensome; (iii) seeks information and/or documents not likely to lead to any evidence relevant to the Settlement Agreement and the Objection; and (iv) seeks information and/or documents protected by the attorney-client privilege and/or the work product doctrine.  A copy of Reed Smith's response to the Subpoena is attached hereto as Exhibit B.

27.    On March 19, 2015, Reed Smith conferred with counsel for the Objecting Parties, John D. Penn, Esq., regarding the Subpoena, explaining the basis for these objections to the

Subpoena.  Reed Smith proposed that, to the extent discovery is actually deemed necessary, the Objecting Parties' request for discovery should be direct to the Trustee, the party most likely to have documents relevant to his alleged bad faith.  Not surprisingly, counsel for the Objecting Parties outright rejected these reasonable offers of compromise.

28.    It is Alpha Beta's understanding that, thereafter, counsel for the Trustee expressed his willingness to produce – despite noting that the Objecting Parties' requests are objectionable on a number of bases – (i) e-mails and letters to and from the Trustee, or his counsel, to the Settling Parties relating to the Settlement Agreement; (ii) drafts of the Settlement Agreement; (iii) drafts of the Trustee's Motion; and (iv) pleadings from the various pre-petition litigation. Even with this compromise, however, have refused to withdraw the Subpoena and continue to press for documents and testimony from, among others, Alpha Beta and its counsel.

29.    It, thus, is clear that the Objecting Parties are not seeking discovery in connection with their Objection.  The discovery they seek is not relevant to the Objection and not calculated to lead to discovery of admissible evidence.  Rather, the Objecting Parties have baselessly asserted an objection to the Settlement Agreement solely for purposes of harassing Alpha Beta and its counsel and apparently as a means for obtaining discovery in this bankruptcy action to be used in the Pursuit New York Action, as well as the Threatened Action.

30.    On this basis and for the additional grounds set forth herein, the Subpoena should be quashed.  The Subpoena imposes an undue burden on Alpha Beta and its counsel, is irrelevant and unnecessary, and otherwise violates the applicable Federal Rules.

## ARGUMENT

31.    As set forth below, the Subpoena should be quashed because it violates the Federal Rules.  Specifically, FRCP 26, which is incorporated by FRBP 9014 and 7026, provides

that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  FRCP 26(b)(1).  FRCP 26(b)(2)(C), in turn, requires a court to limit discovery if it determines that the (i) the discovery "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient . . . ; (ii) the party seeking discovery has had ample time to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefits."  *Id.* at 26(b)(2)(C).

32.    Similarly, FRCP 45 provides that a court "must quash or modify a subpoena" if it determines that the subpoena: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits of Rule 45(c); (iii) requires disclosure of privileged matters; or (iv) subjects a person to undue burden.  *Id.* at 45(d)(3).

33.    Here, the Subpoena not only improperly seeks information that is not relevant to any claim or issue in this bankruptcy matter, but also seeks information protected by the attorney-client privilege and/or the work product doctrine.  Further, the Subpoena does not adhere to the geographical and temporal requirements of FRCP 45.  Because of these overreaching and substantive defects, compliance with the Subpoena would create an unnecessary and undue burden on non-party Alpha Beta and its counsel, which requires that the subpoena be quashed or modified.  *Id.* at 45(c)(3)(A)(iv).  For these reasons, the Subpoena should be quashed.

## I.    GOOD CAUSE EXISTS TO QUASH THE SUBPOENA

### A.    The Subpoena Seeks Information Irrelevant to This Action and Imposes an Undue Burden On Alpha Beta and Its Counsel

34.    Rule 45 affirmatively requires the party serving a subpoena to take reasonable steps to avoid imposing an undue burden on the recipient – *especially* if the recipient is a non-party.  *See* FRCP 45(c)(1).  Indeed, Rule 45 requires a court to quash or modify a subpoena that

subjects a person to undue burden. *See id.* at 45(c)(3)(A)(iv).

35.   When determining whether a subpoena causes an undue burden on a non-party, courts consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed" in responding. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (citing *U.S. v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); *accord Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *see also Night Hawk Limited v. Briarpatch Limited, L.P.,* No. 03 civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003).  "[T]he party seeking the discovery bears the burden of demonstrating the relevant of the sought information to the claims, defenses, or the subject matter of the litigation." *See In Re NewStarcom Holdings, Inc.*, 514 B.R. 394, 400 (Bankr. D. Del. 2014); *see also Salvatore Studios Int'l v. Mako's Inc.,* No. 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001) ("Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matters relevant to the claims and defenses of the parties.").

36.   Further, where the subpoena targets a non-party, "courts may impose broader restrictions." *Concord Boat*, 169 F.R.D. at 49.  The "status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and convenience.'"  *Id.* (quoting Fed. R. Civ. P. 45(c)(2)(B)); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423 (D. Del. 2003) ("It is incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented.").  Notably, a subpoena that "pursues material with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not

be onerous." *In re Blackstone Partners, L.P.,* No. 04 Civ. 7757, 2005 WL 1560505, at *2 (S.D.N.Y. July 1, 2005).

37.     By the same accord, where a party seeks to depose opposing counsel a party seeking the deposition faces an even higher burden.   Depositions of counsel are generally disfavored.  *See United States v. Yonkers Bd. of Ed.*, 946 F.2d 180, 185 (2d Cir. 1991); *accord Allergan Inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) (noting that "depositions of trial counsel are limited to [specific] circumstances"). Courts will permit the deposition of opposing counsel only "where 'the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'"  *Allergan*, 2002 WL 1268047, at *1 (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987)).

38.     Here, the Subpoena should be quashed for creating an undue burden because the materials requested are neither relevant nor reasonably calculated to lead to the discovery of relevant, admissible evidence.   The Objecting Parties are seeking, in sum, ***all*** documents concerning communications between the Trustee and one or more of the Settling Parties. Specifically, the Objecting Parties broadly seek "All documents Concerning Communications from April 7, 2014 to the present between or among one or more of the Signatories."  (Request No. 5; *see also* Request No. 1.)   Unfortunately for the Objecting Parties, such overly broad requests such as "every and all" are not permitted under the Federal Rules.   Rather, discovery requests must be reasonably particularized and targeted towards the claims and defenses at issue. *See, e.g.*,  *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 459 (3d Cir. 2003) (holding that district court "acted properly in denying" motion to compel where party failed to submit

"narrowly tailored document requests"); *Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, No. 1:09-CV-00438-LDD, 2011 WL 2516522, at *11 (D. Del. June 23, 2011), *aff'd*, 490 F. App'x 492 (3d Cir. 2012) (denying "[p]laintiff's proposed far-reaching, overly broad document requests"); *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006) (denying discovery request for "all documents" as "overly broad").

39.     The stated reason for the discovery sought by the Objecting Parties is to explore the Trustee's alleged bad faith in entering into the Settlement Agreement.  But, a party objecting to a proposed settlement involving a debtor should not be permitted to assert such salacious accusations as a basis to obtain discovery to be used in a yet-to-be filed action.

40.     With respect to the remaining requests (Request Nos. 2, 3, 4), although facially more tailored, they are not relevant to the issue of whether the Trustee acted in bath faith, and are being sought for other, disingenuous purposes.  The FRCP only permit discovery of information that is "relevant to a[] party's claim or defense," FRCP 26(b)(1), and, as explained, the burden is on the party issuing the subpoena to demonstrate that the information sought is relevant and material to the allegations and claims at issue.

41.     Here, the basis of the discovery sought is to determine whether the Settlement Agreement "was negotiated in good faith and whether it will maximize value for the Estate." (Objection ¶ 1.)  Muddling the appropriate standard, the Objecting Parties are focused on what was discussed or exchanged between the Settling Parties.  Such information, however, has no bearing on the Trustee's "good faith," and, thus, is irrelevant to the issue at hand.

42.     A court deciding whether to exercise its discretion and approve a settlement of compromise under Bankruptcy Rule 9019(a) must consider whether the compromise is fair, reasonable, and in the best interest of the estate.  *See Key3Media Group, Inc. v. Pulver.com, Inc.*

*(In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citations omitted), *aff'd*, 222 B.R. 243, 249 (D. Del. 1998); *see also, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (commenting that compromises help expedite case administration and minimize litigation).   In undertaking such analysis, the Court need not be convinced that the settlement is the best possible compromise, but rather, must only determine if the settlement falls within a reasonable range of litigation possibilities.   *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) (finding that the proper test to determine whether to approve a proposed compromise is if the compromise falls "within the reasonable range of litigation possibilities").   Specifically, the Court need only determine that the proposed compromise does not fall below "the lowest point in the range of reasonableness."   *See id.*; *see also In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see also, e.g.*, *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (stating that the task of the bankruptcy judge is not to determine whether settlement was the best result that could be achieved).

43.     Here, not only does the Settlement Agreement fall within the range of reasonable possibilities, it is the product of the ***only*** legitimate, actual offer received by the Trustee.   The Objecting Parties make much ado about their supposed intention to make an offer of compromise.   It must be emphasized, however, that when given the option to submit a bid for rights and claims provided for in the Settlement Agreement, the Objecting Parties made no such offer.   Rather, they improperly demanded discovery.   The Objecting Parties have let the carriage get far ahead of the horse.   They cry bad faith, when they make no allegation – because they cannot – of any other legitimate offer of compromise.   If the Objecting Parties in fact wanted to use the discovery process to show bad faith on the part of the Trustee – based on the fact that the Trustee did not accept their alleged higher offer – the Objecting Parties could have simply sought

discovery from the Trustee relating to all offers of compromise received and considered by the Trustee. It is axiomatic that the documents and information reflecting how the Trustee reached his decision would be in the possession of the Trustee. Instead, the Objecting Parties lodged these discovery demands in an effort to circumvent the process and further stall the orderly administration of the Estate.

44.    Further, the Objecting Parties' additional objections to the Settlement Agreement are meritless, and, thus, discovery is not necessary to address these points. *First*, it is axiomatic that any Chapter 7 trustee stands in the shoes of the Debtor, *i.e.*, Pursuit Capital Management, LLC – a party and signatory to the CSA, and, thus, he cannot tortiously interfere with a contract that he is, for purposes of this bankruptcy, deemed to be a party to. *See In re Baldwin*, 184 B.R. 588 (Bankr. E.D. Ark. 1995) (holding that a trustee in bankruptcy, who stands in the debtor's shoes, cannot be liable in tort for interfering with the debtor's contract). Rather, the Trustee, in his capacity as trustee of a bankrupt estate, and as required by the Bankruptcy Code, is simply working with Alpha Beta, as a creditor of the Estate, to oversee and administer the bankruptcy. Thus, to the extent the Trustee finds it in the best interest of the Estate to assert avoidance claims against any of the creditors, the Trustee is simply carrying out his duties and in no way engaging in tortious conduct.

45.    *Second*, the Objecting Parties' entirely misses the mark in contending that the Settlement Agreement wrongfully abdicates the Trustee's rights and powers by selling to the Creditors the avoidance claims. Here, the only avoidance claim at issue is the fraudulent conveyance claim brought against the Pursuit entities and their management. This claim, however, belongs to Alpha Beta and the Claridge Parties – the only creditors that are not targets of the avoidance claim. *See In re Cybergenics Corp.*, 226 F.3d 237,241–44 (3d Cir. 2000)

(explaining that fraudulent transfer claims are not assets of the debtor, but rather property of the creditors).  Specifically, given that the Pursuit entities are the precise targets of the Trustee's fraudulent conveyance suit, Alpha Beta and the Claridge Parties are the only real creditors in interest, and, thus, the avoidance claim belongs to them.

46.     Moreover, the Objecting Parties' discovery demands are not only unreasonably cumulative, they are also completely unnecessary.  As explained, to the extent the issues raised by the Objecting Parties are in any way relevant to the approval of the Settlement Agreement, documents and testimony regarding those issues are available through a more convenient source in this action, namely the Trustee.  The Trustee would have in his possession all documents relating to his decision-making process, including all drafts of the Settlement Agreement.  In fact, it's our understanding that the Trustee has agreed to provide such information to the Objecting Parties.  Thus, the Objecting Parties' effort to obtain information from Alpha Beta, a non-party, and its counsel is unreasonably cumulative.  The documents and information can be obtained from some other source that is more convenient, less burdensome and less expensive.

47.     By the same accord, with respect to Mr. Katsambas's deposition testimony, courts consistently hold that the deposition of opposing counsel is appropriate only upon a showing of substantial need and only after alternative avenues have been exhausted or proven impracticable. *See In re City of Orange*, 208 B.R. 117 (Bankr. S.D.N.Y. 1997).  The Objecting Parties cannot show substantial need, nor have they demonstrated that they cannot obtain the information from another source, namely the Trustee.

**B.    The Subpoena Seeks the Production of Information
        Protected by the Attorney-Client Privilege, the
        Work Product Doctrine and/or Other Applicable Privileges**

48.     Rule 45(d)(3)(A) permits the Court, in its discretion, to quash or modify a

subpoena if it "requires disclosure of privileged or other protected matter." FRCP 45(c)(3)(A)(iii). Here, the Subpoena requests documents that are not only protected by the attorney-client privilege and the work product doctrine, but also by Rule 408 of the Federal Rules of Evidence ("FRE").

49. "The attorney-client privilege protects communications between an attorney and his client related to a fact of which the attorney was informed by his client without the presence of a third party for the purpose of securing primarily either a legal opinion or legal services, where the privilege has not been waived." *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-441-JJF, 2009 WL 2030967, at *1 (D. Del. 2009); *accord In re Joy Global, Inc.*, Civ. No. 01-039-LPS, 2008 WL 2435552 (D. Del. June 16, 2008) ("The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements . . . (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client" quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007))).

50. The work-product doctrine provides a qualified privileged codified in FRCP 26(b)(3). The doctrine "shelters the mental process of the attorney, providing a privileged area within which he can prepare his client's case." *United States v. Nobles*, 442 U.S. 238 (1975). Generally, ordinary work product may be obtained only upon a showing that "the party seeking the material has a substantial need of the materials in the preparation of the party's case and is unable without undue hardship to obtained the substantial equivalent of the materials by other means." FRCP 26(b)(3). If that burden is met, the Court, in ordering discovery of the materials that are work product, "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney." *Id.*

51.     Similarly, FRE 408 prohibits use of conduct or statements made during the course of compromise negotiations.  Specifically, FRE 408(a)(1) provides that evidence of the following nature is not admissible: (i) "furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim;" and  (ii) "conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority."

52.     Each of the document requests lodged in the Subpoena are in some way immune from disclosure pursuant to one or more of the foregoing privileges and protections.  Specifically, Request Nos. 1 and 5 – which generally seek all communications between and among the Settling Parties and the Trustee – are protected by the attorney-client privilege, the work product doctrine and FRE 408.  Communications between Alpha Beta and its counsel relating to the decision to enter into a settlement with the Trustee – which Request No. 5 encompasses – are undoubtedly protected by the attorney-client privilege, as well as the work product doctrine.  Similarly, such documents and communications relate to conduct or statements made during compromise negotiations, and prohibited under FRE 408.

53.     In the same way, Request Nos. 3 and 4 seek drafts of the Settlement Agreement and estimates of the value of and potential recovery for certain claims covered by the Settlement Agreement.  Any prior drafts of the Settlement Agreement not submitted to the Trustee would be protected work product.  *See Andritz Spourt-Bauer, Inc. v. Baezer E., Inc.*, 174 F.R.D. 609, 635 (M.D. Pa. 1997) (finding that prior drafts of similar documents were privileged).  Further, any views of Reed Smith, as counsel to Alpha Beta, concerning the value of or potential recovery on the claims would also be protected "opinion work product," containing conclusions and mental

impressions of counsel.

54.    In the same vein, any documents possessed by Reed Smith regarding valuation and anticipated recoveries would be based upon its communications with its client, and, thus, would plainly be protected by the attorney-client privilege.

### C.    The Subpoena Does Not Allow a Reasonable Time to Comply

55.    The Subpoena, which is not at all targeted in terms of date range, potential custodians, and, in some instances, even topic, requests an extensive amount of documents to be produced within *six (6)* days of the date of service of the Subpoena.

56.    Rule 45(d)(3)(A)(i) of the Federal Rules of Civil Procedure provides that the Court "*must* quash or modify a subpoena that fails to allow a reasonable time to comply."  FRCP 45(d)(3)(A)(i) (emphasis added).  The Subpoena does not allow Alpha Beta's counsel enough time to collect, review, and produce the requested documents in the timeframe proposed by the Objecting Parties.  The Subpoena requests documents spanning a number of custodians, relating to, in some instances, *any* possible topic, including communications between counsel to Creditors and the Trustee – some of which may be sensitive and privileged, and could not be produced without careful review and, potentially, a protective order.  Accordingly, Alpha Beta's counsel cannot reasonably comply with the Subpoena within *six* days, and asks this Court to quash the subpoena for documents on these grounds alone.  *See, e.g.*, *Saffady v. Chase Home Fin., Inc.*, No. 10-11965, 2011 WL 717564, at *2, 3 (E.D. Mich. Feb. 22, 2011) (quashing subpoena for depositions and documents that provided six calendar days for compliance); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, No. 11-cv-1665, 2011 WL 5429005, at *8 (E.D. Pa. Nov. 7, 2011) (quashing subpoena duces tecum for failure to allow reasonable time to comply where there were "five calendar days between the date of service" and compliance).

- 19 -

**D.      The Subpoena Requires a Person to Comply
Beyond the Geographical Limits of Rule 45(c)**

57.      Rule 45 of the Federal Rules of Civil Procedure provides that "a subpoena may command a person to attend a . . . deposition *only* . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."  FRCP 45(c)(1)(A) (emphasis added).  Specifically, Rule 45 requires that "the issuing court . . . quash or modify a subpoena that requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person."  *Shahin v. Del. Fed. Credit Union*, No. 10-475-LPS, 2012 WL 3870327, at *2 (D. Del. Sept. 5, 2012) (citing former FRCP 45(c)(3)(A)(ii)).

58.      Here, the Subpoena would require travel far exceeding the FRCP limitation.  Specifically, Mr. Katsambas would have to travel from London to New York to take the requested deposition.  Such unnecessary and distant travel for purposes of discovery is expressly precluded by Rule 45, and, thus, the Subpoena should be quashed for this reason as well.

**E.      The Subpoena Serves No Purposes Other than to Harass
Alpha Beta and its Counsel, and to Improperly Obtain
Evidence for Purposes Other than Use in this Bankruptcy**

59.      FRCP 26(g)(1)(B)(ii) provides that discovery may not be sought "for [an] improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"  FRCP 26(g)(1)(B)(ii); *see also U.S. v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3d Cir. 1986) ("[I]f a subpoena is issued for an improper purpose, such as harassment, its enforcement constitutes an abuse of the court's process."); *Deer Park Spring Water, Inc. v. Appalachian Mountain Spring Water Co.*, No. 89 Civ. 4029, 1991 WL 73840, at *2 (S.D.N.Y. Apr. 29, 1991) ("[A] party's conduct of discovery is always subject to the requirement, *inter alia*, that requests 'not [be] interposed for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation.'"").  Here, it is clear that that the Subpoena seeks documents for the improper purpose of harassment and utilizing such information in other actions unrelated to the Objection.

60.     The overly broad nature of the Subpoena's document requests reveal that the true purpose of the Objecting Parties is to obtain discovery for use in matters other than the instant bankruptcy.   For example, Request No. 5 broadly seeks all documents concerning communications from April 7, 2014 to the present between one or more of the signatories to the Settlement Agreement.  Notably, this request is not limited to communications concerning the Settlement Agreement – or any other topic for that matter – but rather is a blanket request for each and every communication exchanged between the signatories to the Settlement Agreement for approximately one year.  Such broad requests are in absolutely no way tailored to the issues at hand or relevant to whether the Trustee acted in good faith to achieve a fair and economically reasonable settlement.

61.     Likewise, Request No. 2 requests all documents and communications referring to, in any manner whatsoever, the Indemnification Claims, the Potential Avoidance Claim, the Debtor Claims or the UBS Claims.  Certain of these claims have been pending for years and the Objecting Parties' wide-ranging and sweeping requests for all communications concerning these claims is clearly meant to capture information that goes well beyond the instant Settlement Agreement.  Further, it is telling that the Subpoena seeks deposition testimony from Mr. Katsambas of Reed Smith.  As the Objecting Parties are aware, Mr. Katsambas has not been involved in the negotiation of the Settlement Agreement and can offer no insight into whether the Trustee has acted in good faith.  Mr. Katsambas was substantially more involved with the issues that are the subject of the Pursuit New York Action and the Alpha Beta Action and,

presumably, the Objecting Parties intend to question Mr. Katsambas on these topics.

## II.    A PROTECTIVE ORDER SHOULD BE ISSUED

62.    A protective order requiring prior Court approval of any subpoenas to be served by the Objecting Parties on Alpha Beta or Reed Smith is appropriate.  FRCP 26(c) states in relevant part that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among things, "prescribing a discovery method other than the one selected by the party seeking discovery."  FRCP 26(c).

63.    As set forth in detail above, the information sought through the Subpoena is irrelevant and not calculated to lead to the discovery of admissible evidence; as such, complying with the Subpoena will impose undue burden and expense on Alpha Beta and Reed Smith. Furthermore, the Subpoena's unreasonably – and patently improper – short deadline for the production of documents, coupled with its attempt to compel deposition testimony beyond the geographical scope of FRCP 45, shows that the Subpoena is designed to harass Alpha Beta.

64.    To make matters worse, the Objecting Parties have failed to confer in good faith with Alpha Beta regarding the scope of the Subpoena and a potential compromise concerning the broad information sought by the Subpoena.  Specifically, shortly after the issuance of the Subpoena, Reed Smith responded in writing to the Objecting Parties, noting its objections thereto and inviting the Objecting Parties to meet and confer.  (*See* Exhibit B.)  The very next day, on March 19, 2014, Reed Smith spoke with counsel for the Objecting Parties to further explain its objections to the Subpoena.  During this conference, Reed Smith suggested that the scope of the Subpoena could be sufficiently tailored so as to reduce the burden associated with compliance by

simply obtaining the requested information (to the extent even relevant) from the Trustee.  In fact, the Trustee has agreed to produce the document at issue, but the Objecting Parties have refused to withdraw the Subpoena.  This refusal to meet and confer in good faith makes clear that the sole purpose of the Subpoena is to harass, burden and impose unnecessary costs upon Alpha Beta.  Moreover, Alpha Beta is aware that the Objecting Parties have served similarly baseless subpoenas in this matter on other non-parties and it is therefore apparent that the Objecting Parties' rampant abuse of the discovery process will continue unless a protective order is issued.

65.    Accordingly, a protective order barring the Objecting Parties from serving any additional subpoenas on Alpha Beta or Reed Smith without prior approval of this Court is warranted.

### III.    THE COURT SHOULD AWARD ATTORNEY'S FEES AND COSTS

66.    Under FRCP 45, a court may also award fees and costs pursuant to 28 U.S.C. § 1927, which provides that any attorney who "so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." *See also Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) ("The principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings.") (internal quotation marks and citation omitted)*; In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) ("[A]n award under [Section] 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.") (internal quotation marks and citation omitted).  Similarly, this Court has the authority under its inherent supervisory powers to impose sanctions against the Objecting Parties and their counsel for pursuing discovery in bad faith.

67.    The Subpoena is blatantly improper for the multiple reasons addressed above,

including because the Subpoena seeks information that is completely irrelevant to the Motion. The documents and information sought have absolutely no bearing on the Trustee's consideration and evaluation of potential offers of compromise – which is the only issue under the Court's consideration.  The extreme irrelevance of the documents sought by the Subpoena alone warrants the imposition of sanctions against the Objecting Parties.

68.     The clear impropriety of the Subpoena demonstrates that the Objecting Parties and their counsel lacked any semblance of a good faith basis for issuing the Subpoena.  *See Kenney, Becker LLP*, No. 06 Civ. 2975 (JSR), 2008 WL 681452, at *2 (S.D.N.Y. Mar. 10, 2008) (finding that "plaintiffs had no proper basis for the subpoena and were acting in bad faith," in part, because the subpoena issued by counsel was blatantly improper for numerous reasons); *see also Ferguson*, 454 F. App'x at 112 (discussing federal courts' "inherent power" to impose sanctions against counsel for bad-faith conduct).

69.     Accordingly, this Court should award Alpha Beta the recovery of its attorneys' fees and costs incurred in addressing this misconduct through the instant Motion to Quash and otherwise.

### CONCLUSION

For all of the foregoing reasons, Alpha Beta respectfully requests that the Court quash the Subpoena issued by the Objecting Parties, issue a protective order barring the Objecting Parties from making further efforts to subpoena Alpha Beta or Reed Smith absent prior Court approval, awarding Alpha Beta recovery of its attorneys' fees and costs for this matter, and such further relief as the Court deems just and proper.

Dated:  March 26, 2015
       Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:   /s/ Richard A. Robinson
      Richard A. Robinson (No. 5059)
      1201 North Market Street, Suite 1500
      Wilmington, DE  19801
      Telephone: (302) 778-7500
      Facsimile: (302) 778-7575
      rrobinson@reedsmith.com

      and

      John L. Scott, Esq.
      599 Lexington Avenue
      New York, NY  10022
      Telephone: (212) 521-5400
      Facsimile: (212) 521-5450
      jscott@reedsmith.com

      Counsel for Alpha Beta Capital
      Partners, L.P.