IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PURSUIT CAPITAL MANAGEMENT, LLC,<br><br>Debtor. | Case No. 14-10610 (LSS)<br><br>Chapter 7<br><br>Hearing Date: April 2, 2015 at 11:00 a.m. (ET)<br>Objection Deadline: March 31, 2015 at 12:00 p.m. (ET)<br><br>Ref. Nos. 66, 67, 79 and 89 |

## RESPONSE TO MOTIONS TO QUASH AND REQUEST TO COMPEL DISCOVERY

Now Come Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P. (collectively, the "**Creditors**") and in support of their Response to the Motions to Quash Discovery [Docket Nos. 79 and 89] and their Request to Compel Discovery regarding the Preliminary Objection[1] to the Trustee's Motion for an Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests [Docket No. 67] (the "**Objection**" regarding Docket No. 66, the "**Motion**") represent as follows:

### BACKGROUND

1.  On March 2, 2015, the Chapter 7 Trustee (the "**Trustee**") for the above captioned Debtor (the "**Debtor**") filed his Motion seeking approval of an agreement (the "**Agreement**") by, between, and among the Trustee and Alpha Beta Capital Partners, L.P., Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider and Lillian and Leonard Schneider (the "**Claridge Parties**"), Harris, O'Brien, St. Laurent & Chaudhry LLP and Reed Smith LLP (the "**Attorney**

---

[1] The Objection is a preliminary objection because, as noted therein, discovery is required to determine the process by which the Transaction was negotiated and whether it lacks good faith and fails to maximize value for the Estate. The Creditors reserved their right to amend and supplement the Preliminary Objection to include information that is learned through the discovery process.

Signatories") to settle, transfer and assign certain claims, rights and interests (the "**Transaction**") that are property of the Debtor's estate (the "**Estate**") being held for the benefit of all creditors. The Trustee, Claridge Parties and Attorney Signatories are collectively referred to as the "**Signatories**."

2.   The Creditors objected because, among other things, the proposed Transaction does not maximize the value of the assets being sold and is clearly not in the best interest of the Debtor's Estate. The Creditors also objected to the Trustee's actions in preferring one group of creditors to the detriment of other identically situated creditors. Specifically, the Trustee refused to consider a higher and better proposal and signed an agreement that prohibits the acceptance of higher and better proposals. Such actions prefer one group of creditors to the detriment of similarly situated creditors, and are indicia of a lack good faith in the proposed Transaction. Accordingly, as noted in the Objection, the Creditors seek discovery regarding the full extent of the Signatories' actions in negotiating the proposed Transaction.

3.   In order to discover additional information and documents in support of its Objection, the Creditors timely served subpoenas upon the signatories identified below as well as a request for production of documents to the Trustee.[2] The subpoenas sought documents and deposition testimony from the Signatories on an expedited basis because of the deadline dictated by the original hearing set for the Motion. The Creditors made efforts to provide as much time as possible to respond to the subpoenas by serving them contemporaneously with filing of the Objection and only ten days after the Motion was filed. In fact, to provide as much time as

---

[2] The Motion to Quash alleges that the subpoena on Ms. Schneider was not properly served. Such allegation is, of course, untrue. Regardless, the Motion to Quash does not deny that the subpoena was delivered to, and received by, Ms. Schneider. The remaining Claridge Parties successfully evaded service of the subpoenas addressed to them.

possible to respond to the discovery requests, the Creditors even filed their Objection one week earlier than required.

4.  Quite simply, the Creditors did not have the luxury of seeking a delay to allow discovery without also seeking discovery in the limited amount of time that was available. The need for speed was mitigated somewhat when the Trustee moved the hearing date from March 26 to early April 7, 2015. As Exhibit 4 to the Motion to Quash reflects, the Creditors suggested delaying the hearing even further for a more orderly discovery process.[3]

5.  The Creditors initially suggested postponing the hearing on the Motion to allow for the discovery to proceed on a more appropriate time frame. It is worth noting that nothing in the underlying Motion or the Agreement indicates that "time is of the essence" or that there is a need for an expedited approval process. Further, the discussions the Trustee had undertaken with the Creditors prior to filing the Motion had been ongoing for a number of months without any indication of any urgency.

6.  The speed of the discovery requests was dictated by the Trustee and the timeline selected for hearing and resolution of the Motion. The Creditors would have given witnesses more time to respond, but the timeline for the hearing on the Motion left very little time between receiving notice of the Motion and to the time to prepare and file and objection, obtain documents, review documents and schedule and take depositions. In any event, the proposed timeline for production and deposition under the subpoenas was entirely consistent with Local Rule 7030-1(b) insofar as the subpoenas provided more than seven days' notice of any deposition. Accordingly, the amount of time between service of the subpoenas and the time for

---

[3] There was no response to Exhibit 5 because of the obvious futility of responding. It is abundantly clear from that letter and from the aborted telephonic conference discussed below that there was never any intention to cooperate in any way on discovery issues on the part of the Claridge Parties or the Attorneys.

compliance was reasonable under the circumstances that existed at that time and, as, Exhibit 4 shows, the Creditors have suggested other alternatives.

7.  Under Local Rule 7030-1(c), Mr. Harris was required to file his Motion to Quash at least one business day before the scheduled deposition. Instead, he waited until after business hours on the evening before the scheduled deposition to file the Motion to Quash. The late filing of the Motion to Quash was untimely and provides further evidence of improper litigation gamesmanship employed by the Claridge Parties.

8.  The Trustee, as the moving party, has until April 11 to respond to the Rule 7034 request that was served upon him. Depending upon the documents that are ultimately produced, there may or may not be a need to depose the Trustee or others.

9.  In an effort to address the concerns that were raised, the Creditors asked if at least a subset of the requested documents would be produced, and inquired about how long it would take to produce that subset of documents. This inquiry was met with silence, leaving the Creditors to logically conclude that Mr. Harris and Ms. Schneider were not interested in making any effort to comply with the subpoenas. This is consistent with how Mr. Harris immediately and abruptly terminated a telephone call that had been scheduled to discuss the subpoena he received. The termination was without justification since the Creditors' attorneys were on the line, ready, willing and prepared to discuss the subpoena and the discovery process.

10. In contrast, somewhat, counsel for the Creditors and Reed Smith did have a telephonic conference regarding the subpoena it received. At the conclusion of that conference, counsel for Reed Smith indicated that he would review the subpoena once he returned to his office from an out of state meeting of his firm and advise whether there were any of the requested documents Reed Smith would produce in response to the subpoena it received. Rather

than providing that information and continuing the dialog, Reed Smith filed its own Motion to Quash.

11. Notably, while Mr. Harris and Reed Smith submitted written objections before the March 18 document production date, Ms. Schneider's objection was transmitted on March 19 – after the deadline to produce documents passed even though proof that Ms. Schneider had been served was filed on March 17 [Docket No. 74], before that deadline.

12. The Objection raises serious issues regarding the integrity of the process used to secure the proposed Transaction. Obviously, each of the Signatories (or someone acting on their behalf and under their direction and control) has possession of information and documents that reflect the communications and bidding process – what the trustee told them, what they told the Trustee and what they discussed among themselves – as well as how the Agreement evolved as it went from draft to draft. As noted, each of the subpoenaed individuals or Signatories may have information regarding creation of the Agreement and associated drafts. Such information is clearly relevant to the issue of whether the Trustee acted in good faith and in the best interest of *all* creditors in negotiating the Agreement.

13. The Motion to Quash uses sweeping generalities to gloss over certain fundamental facts. In particular, the Creditors' discovery is directed at Signatories in their capacities as such. The Motion to Quash seeks to protect parties who executed the Agreement with the Trustee from being required to provide evidence regarding how that agreement came about. Either the Signatories—or someone acting on their behalf who would be subject to subpoena—has that information, has drafts of the Agreement and communicated with the Trustee. There is neither a privilege nor exemption from discovery with respect to that information and those documents. The privilege applies to certain communications between

5

attorneys and their clients. By contrast, there is no privilege between or among the Signatories in their capacity as parties to the Agreement (except possibly as between Attorney Signatories and their respective clients). Likewise, there would be no privileged communications between the Attorney Signatories since the Attorney Signatories represent different individuals and entities and neither represents the other.

14. The documents (and proposed testimony areas) are well within the scope of discovery under Bankruptcy Rule of Procedure 7026 which provides that Federal Rule of Civil Procedure 26 applies in contested matter. Fed.R.Civ.P. 26(b) provides (in pertinent part),

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

15. This admittedly broad standard was satisfied by the Subpoenas which seek information regarding the discussions and the underlying assets (or rights) sought to be sold.

### There is No Broad Immunity from Discovery

16. The Motion to Quash would have the Court believe that only one side of a conversation or discussion is discoverable – the side that is in the Trustee's possession. That is never the case since only by seeing both sides (or in this case, all sides) of the discussion and process can the Creditors get any level of confidence that they have received the relevant (and discoverable) information regarding the communications and discussions with the Trustee and the other Signatories' non-privileged discussions regarding their communications with the Trustee. It is not unusual for two participants in the same ongoing transaction to produce

different sets of documents as a result of different data retention practices. Knowing this, parties seek discovery from all participants to assure that they have a complete record.

17. The Motion to Quash also implies that testimony cannot be sought from the Attorney Signatories because they represent one or more of the Claridge Parties. This overlooks the direct contractual relationship (and presumably non-privileged communications) between Mr. Harris on behalf of his firm and Reed Smith as both a signatory to the Agreement and a party who made an offer to the Trustee.[4] Surely Mr. Harris and the Attorney Signatories knew and understood that, by making an offer and signing the Agreement solely in their individual capacities (and not as counsel for anyone) they became part of the Agreement and are subject to discovery just like every other individual or entity that signed the Agreement. The Attorney Signatories could have acted solely as counsel for others but affirmatively chose to act on their own behalf and are susceptible to treatment as any other entity that signed the Agreement.

18. As set forth in his Motion, the Trustee seeks approval of the Agreement as "a fair and reasonable price for the claims, rights and interests being settled, assigned or transferred."[5] Further, the Trustee avers that the Agreement and compromise of the claims is "in the best interests of the Debtor's estate and its creditors."[6] The Signatories cannot rely on the Trustee's attestations with one hand, and but then use claims of privilege to block discovery on such issues. The Signatories can't have it both ways. To the extent the Trustee or others claim

---

[4] Agreement, p. 3, third "Whereas" which states, ". . . the Harris Firm, and Reed Smith have made an offer (i) to settle the New York Action, and (ii) for the Creditors to take an assignment of all rights, interests of the Estate, if any, in the Debtor Claims, the Indemnification Claims, and the UBS Claim." Mr. Harris signed the Agreement on behalf of Harris, O'Brien, St. Laurent & Chaudhry LLP.

[5] Motion at ¶ 24.

[6] Id. at ¶ 25.

7

privilege with respect to such discovery; they are precluded from relying on such information to support the Motion. *See In re Residential Capital*, 491 B.R. 63, 65 (Bankr. S.D.N.Y. 2013).

19. It is not unusual (and is actually quite common) for a document request or a deposition to request documents or testimony that might be subject to a privilege of some kind. To the extent that the Attorney Signatories wish to assert specific privileges, the Attorney Signatories are fully capable of asserting those privileges as documents (or types of documents) are identified, as issues arise or question are propounded. This is how discovery proceeds around the nation every day. In fact, the pre-printed portion of each subpoena and paragraph 23 of the attachment thereto both include instructions on how that may be undertaken. If there is a dispute with respect to any such assertion, the Court can evaluate whether a privilege applies at that time in response to a specific question or document. The time to evaluate privileges is when they are asserted as to specific documents or questions and not before. The blanket assertion of privilege is both improper and premature. However, with respect to the documents requested in the subpoenas, the Creditors have advised the moving parties that they would be willing to agree that neither the Attorney Signatories nor Ms. Schneider would be required to produce a privilege log with respect to communications between the Attorney Signatories and their respective clients where no other person was involved or was copied.

20. With respect to Ms. Schneider, the Creditors have advised her counsel that are willing to accommodate her schedule and to allow for as many breaks as she requests and if her only contacts regarding the Agreement were with her attorneys, her deposition would be very brief. In fact, her deposition was scheduled last so it could easily be dropped if the documents and earlier depositions showed that she would not have any testimony regarding interaction or communications with parties other than her attorneys.

21.  To the extent that she or someone acting on her behalf, had non-privileged communications and documents, those would still be subject to subpoena. While it is possible that all such documents would be in the hands of the Attorney Signatories, there is no way to confirm that assertion in advance of any documents being produced or any testimony being provided.

### Frivolous Objections

22.  The Motion to Quash argues that the Creditors' Objection is meritless because the Creditors "have not submitted a bid for the rights and claims addressed in the Settlement Agreement" or paid the Trustee funds that are neither owed nor owing. As to the latter, the argument that a party must make a payment of funds that are not owed as a condition precedent to objecting to a motion is beyond specious.[7]

23.  As noted in the Objection, the Creditors have no obligation to comply with the bid procedures the Trustee suggested in the Motion. Abstaining from a fatally flawed bid process that is not supported by the Agreement is no bar to objecting to that Agreement. Had good faith been demonstrated by a provision in the Agreement for the Trustee to solicit and accept bids or had the Court established formal bidding procedures after notice and a hearing, their argument might deserve a second look. Indeed, the Creditors remain interested in participating in a transparent and fair process related to sale of the subject assets. Under the circumstances, however, there are significant questions of fact as to whether the Trustee and Signatories have

---

[7] The Motion to Quash makes accusations that certain payments received by the Creditors prepetition may be subject to avoidance. The propriety of such payments, however, was already determined in the underlying prepetition arbitration. In that action, the Claridge Parties complained about the Creditors' entitlement to such payments, but the arbitrator rejected their attacks with only a minor adjustment related to how the Debtor's obligation was calculated.

negotiated and proposed the Agreement in good faith and, by extension, whether the Trustee is in a position to run a fair and transparent bidding process.

### Request to Compel Discovery

24. The Motion to Quash confirms that service of the subpoenas upon Ms. Schneider, Reed Smith and Mr. Harris was effective and complied with Rule 9016 of the Bankruptcy Rules. Instead of taking steps to comply with the subpoenas or responding to indicate when they could comply with the Subpoenas, Mr. Harris and Ms. Schneider categorically refused to comply with the subpoenas in any way whatsoever and Reed Smith filed its Motion to Quash without ever following up on the initial discussions. No documents have been provided by the Attorney Signatories or Ms. Schneider, nor is there any indication that they intend to make any effort to identify responsive documents.

25. To the extent that Signatories claim that they need more time to comply with the discovery requests, the Creditors have never opposed having adequate time to prepare to present their case on the merits. The Creditors consent to providing a reasonable amount of time for all to comply with the discovery requests so the hearing on the Motion can proceed in an orderly manner.

26. The Attorney Signatories and Ms. Schneider should be compelled to produce all non-privileged documents that are responsive to the subpoenas by a date certain and to be deposed after a reasonable time is provided to review the documents. The utter and complete refusal to provide responsive documents that have been duly subpoenaed should not be countenanced by this Court.

## CONCLUSION

The Creditors respectfully request that the Court deny the Motions to Quash, require the moving parties to comply with the subpoenas by a date certain and grant the Creditors such other and further relief to which they might be entitled.

Dated: March 31, 2015
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ William E. Chipman, Jr.
_____
William E. Chipman, Jr. (No. 3818)
1007 North Orange Street, Suite 1110
Wilmington, Delaware 19801
Telephone:   (302) 295-0191
Facsimile:   (302) 295-0199
Email:        chipman@chipmanbrown.com

-and-

John D. Penn
**PERKINS COIE LLP**
500 North Akard Street, Suite 3300
Dallas, Texas 75201
Telephone:   (214) 965-7700
Facsimile:   (214) 965-7784
Email:        jpenn@perkinscoie.com

-and-

Peter S. Cane
**CANE & ASSOCIATES LLP**
200 Park Avenue, 17th Floor
New York, New York 10166
Telephone:   (212) 627-7000
Facsimile:   (646) 349-2312
Email:        peter@canelaw.com

*Counsel for Anthony Schepis, Frank Canelas, Pursuit Investment Management, LLC, Pursuit Opportunity Fund I, L.P. and Pursuit Capital Management Fund I, L.P.*